1    RONALD J. TENPAS
     Acting Assistant Attorney General
2    Environment and Natural Resources Division
     U.S. Department of Justice
3
     ELLEN MAHAN
4    Deputy Chief
     Environmental Enforcement Section
5    ANN C. HURLEY  DC Bar No. 375676
     Trial Attorney
6    Environmental Enforcement Section
     U.S. Department of Justice
7    301 Howard Street, Suite 1050
     San Francisco, CA  94105
8    Tel:  (415) 744-6480
     Fax:  (415) 744-6476
9    E-mail: ann.hurley@usdoj.gov

10    Attorneys for Plaintiff United States of America

11    (Additional Attorneys on Next Page)

12

13             UNITED STATES DISTRICT COURT
               NORTHERN DISTRICT OF CALIFORNIA

14

15    UNITED STATES OF AMERICA, the    )
     PEOPLE OF THE STATE OF    )
16    CALIFORNIA, *ex rel.* CALIFORNIA AIR   )
     RESOURCES BOARD, and NORTH    )
17    COAST UNIFIED AIR QUALITY    )
     MANAGEMENT DISTRICT,    )

18              Plaintiffs,    )

19               v.    )

20    EVERGREEN PULP, INC.,    )

21              Defendant.    )

CIV NO.

**C 07 5067**

COMPLAINT FOR CIVIL PENALTIES
AND INJUNCTIVE RELIEF

22

23

24

25

26

27

28

1  EDWIN G. BROWN JR.
   Attorney General of the State of California
2  MARY HACKENBRACHT, Assistant Attorney General
   JOHN DAVIDSON, Supervising Attorney General
3  ANITA E. RUUD, Deputy Attorney General CA Bar No. 072483
   Office of the California Attorney General
4  455 Golden Gate Avenue, Suite 11000
   San Francisco, CA 94102
5  Tel: (415) 703-5533
   Fax: (415) 703-5480
6  E-mail: anita.ruud@doj.ca.gov

7  Attorneys for Plaintiff California Air Resources Board

8
   NANCY DIAMOND CA Bar No. 130963
9  Law Offices of Nancy Diamond
   822 G Street, Suite 3
10 Arcata, CA  95521
   Tel:  (707) 826-8540
11 Fax:  (707) 826-8541
   E-mail: ndiamond@humboldt1.com
12
   Attorney for Plaintiff North Coast Unified Air Quality Management District
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Complaint for Civil Penalties
and Injunctive Relief

1    The United States of America, acting at the request of the Administrator of the United

2  States Environmental Protection Agency ("EPA"), and in conjunction with the California Air

3  Resources Board ("ARB") and the North Coast Unified Air Quality Management District

4  ("North Coast" or the "District") allege as follows:

5                            **NATURE OF ACTION**

6    1.    This is a civil action brought pursuant to Section 113(b) of the Clean Air Act (the

7  "CAA"), 42 U.S.C. § 7413(b), California Health and Safety Code ("HSC") § 42403, and North

8  Coast Unified Air Quality Management District Rule 105 alleging that Defendant Evergreen

9  Pulp, Inc. ("Defendant" or "Evergreen") violated the CAA, California State law and District

10  regulations at its kraft pulp mill in Samoa, Humboldt County, California (the "Facility").

11    2.    Notice of the commencement of this action has been given to the State of

12  California, as required by Section 113(b) of the CAA, 42 U.S.C. § 7413(b).

13                            **JURISDICTION**

14    3.    This Court has jurisdiction over the subject matter of this action pursuant to 28

15  U.S.C. §§ 1331, 1345, 1355, and CAA Section 113(b), 42 U.S.C. § 7413(b).  In addition, this

16  Court has supplemental jurisdiction over ARB's and North Coast's claims under 28 U.S.C. §

17  1367.  This Court also has jurisdiction over the parties to this action.

18    4.    Venue lies in this District pursuant to 42 U.S.C. § 7413(b), and 28 U.S.C. §§

19  1391(b) and (c), and 1395(a), because the violations occurred in and Defendant conducts

20  business in this judicial District.

21                            **DEFENDANT**

22    5.    Evergreen is a Colorado corporation doing business in this District.

23    6.    At all relevant times, Evergreen owned and operated a kraft pulp mill located in

24  Samoa, Humboldt County, California.

25    7.    Evergreen is a "person" as defined in Section 302(e) of the CAA, 42 U.S.C.

26  § 7602(e).

27          **STATUTORY AND REGULATORY BACKGROUND**

28    8.    The CAA, 42 U.S.C. §§ 7401 *et seq.*, establishes a comprehensive program to

Complaint for Civil Penalties
and Injunctive Relief

1  "protect and enhance the quality of the Nation's air resources so as to promote the public health

2  and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b)(1). This

3  program is founded on shared Federal and State responsibility.

4        9.    Sections 108 and 109 of the CAA require EPA to establish, review, and revise

5  nationally applicable health-based standards for a small class of common air pollutants, known as

6  national ambient air quality standards ("NAAQS"). 42 U.S.C. §§ 7408-7409.

7        10.    Section 110 of the CAA, 42 U.S.C. § 7410, requires that each state adopt and

8  submit to EPA for approval a plan for the implementation, maintenance, and enforcement of the

9  NAAQS in each air quality control region within a state. These plans are known as State

10  Implementation Plans ("SIPs"). These approved SIPs are federally enforceable.

11        11.    Section 111 of the CAA, 42 U.S.C. § 7411, requires EPA to publish a list of

12  categories of sources that, in EPA's judgment, cause or contribute significantly to air pollution

13  which may reasonably be anticipated to endanger the public health or welfare and to promulgate

14  standards of performance for new stationary sources within those categories. These standards are

15  called the New Source Performance Standards ("NSPS").

16        12.    Title V of the CAA requires major stationary sources of air pollution to obtain an

17  operating permit that includes emissions limitations and such other conditions as are necessary to

18  assure compliance with applicable requirements of the CAA (including, *e.g.*, SIP and NSPS

19  requirements). 42 U.S.C. §§ 7661a-7661f.

20        13.    On May 3, 1995, EPA granted final interim approval of North Coast's Title V

21  program. 60 *Fed. Reg.* 21707 (May 3, 1995.)

22        14.    On August 31, 2001, North Coast issued a final Title V permit to the Facility.

23        15.    Section 112 of the CAA, 42 U.S.C. § 7412, requires EPA to list categories of

24  sources of hazardous air pollutants ("HAPs") and to establish National Emission Standards for

25  Hazardous Air Pollutants ("NESHAP") for the listed categories. The CAA requires the

26  NESHAP to reflect the maximum decree of reduction in emissions of HAP that is achievable.

27  This level of control is known as maximum available control technology or "MACT."

28        16.    On July 16, 1992, EPA published a list of source categories that would be

Complaint for Civil Penalties
and Injunctive Relief

1  regulated under Section 112.  That list included the pulp and paper production source category.

2  57 *Fed. Reg.* 31576 (July 16, 1992.)

3       17.    On January 12, 2001, EPA published the final MACT standard for HAPs for

4  Chemical Recovery Combustion Sources at Kraft, Soda, Sulfite and Stand-Alone Semichemical

5  Pulp Mills, 40 C.F.R. Part 63, Subpart MM, §§ 63.860-63.868.  66 *Fed. Reg.* 3179 (January 12,

6  2001.)

7       18.    In relevant part, 40 C.F.R. § 63.860 states that the requirements of Subpart MM

8  apply to the owner and operator of each kraft pulp mill that is a major source of HAP emissions.

9  Section 63.860 also states that affected facilities include each existing chemical recovery system.

10  In relevant part, 40 C.F.R. § 63.861 defines a "chemical recovery system" as all recovery

11  furnaces, smelt dissolving tanks, and lime kilns at a kraft pulp mill, and that each existing

12  recovery furnace, smelt dissolving tank, or lime kiln is considered a process unit within a

13  chemical recovery system.

14       19.    40 C.F.R. § 63.863 requires the owner or operator of an existing affected source

15  or process unit to comply with the requirements in Subpart MM by no later than March 13, 2004.

16 / 17
### FIRST CLAIM
**(Lime Kiln - Failure to Comply with Permit )**

18       20.    Paragraphs 1 through 19 are incorporated herein by reference as if fully set forth

19  below.

20       21.    Evergreen is the current owner and operator of the Facility.

21       22.    The Facility is a major source of air pollutants and is subject to the requirements

22  of the Title V operating permit program administered by North Coast, including the requirement

23  to operate in accordance with its Title V operating permit.

24       23.    The Facility includes a rotary lime kiln manufactured by Traylor Engineering and

25  Manufacturing Company.

26       24.    On August 31, 2001, North Coast issued a final title V permit to the Facility.

27  Title V permit conditions applicable to the lime kiln are identified in Permit Number NP-073.

28  Permit Number NP-073, Condition III.A.1 prohibits the permittee from discharging particulate

Complaint for Civil Penalties
and Injunctive Relief

1   matter in excess of 0.20 grains per standard cubic foot of exhaust gas corrected to ten percent

2   oxygen or 1.0 pounds per ton of kraft pulp mill production ("KPMP"), whichever is more

3   stringent.

4          25.     The Facility exceeded the particulate matter emission limit of 1.0 pounds per

5   ton KPMP specified in Permit Number NP-073, condition III.A.1 from at least August 2005.

6          26.     Under CAA Section 113(b), 42 U.S.C. § 7413(b), Defendant is subject to issuance

7   of an injunction, requiring it to install an approved emission control system that allows it to

8   comply with its Title V permit.

9          27.     Under CAA Section 113(b), 42 U.S.C. § 7413(b), and 40 C.F.R. Part 19,

10  Defendant is liable for a civil penalty of up to $32,500 per day for each violation after March 15,

11  2004.

12                          **SECOND CLAIM**
                 **(Failure to Comply with MACT Emission Limit for Lime Kilns)**
13

14         28.     Paragraphs 1 through 27 are incorporated herein by reference as if fully set forth

15  below.

16         29.     EPA's regulations at 40 C.F.R. § 63.862(a)(1) require the owner or operator of an

17  existing kraft pulp mill to comply with the following particulate matter emissions standard for

18  Lime Kilns:  0.064 gr/dscf corrected to 10 percent oxygen.

19         30.     EPA's regulations at 40 C.F.R. §§ 63.6(f)(2)(i) and (f)(3) provide that EPA will

20  make findings of compliance with emission standards based on results of performance tests.

21         31.     Evergreen has violated 40 C.F.R. § 63.862(a)(1) by exceeding the particulate

22  matter emissions standard for lime kilns, based upon performance testing conducted on August

23  18, 2005.

24         32.     Under CAA Section 113(b), 42 U.S.C. § 7413(b), Defendant is subject to issuance

25  of an injunction, requiring it to install an approved emission control system that allows it to

26  comply with the particulate matter emissions standard for lime kilns in 40 C.F.R. § 63.862(a)(1).

27         33.     Under CAA Section 113(b), 42 U.S.C. § 7413(b), and 40 C.F.R. Part 19,

28  Defendant is liable for a civil penalty of up to $32,500 per day for each violation after March 15,

                                                          Complaint for Civil Penalties
                                     -4-                  and Injunctive Relief

1 | 2004.

2 | <div align="center">**THIRD CLAIM**</div>

3 | <div align="center">**(Smelt Dissolver - Failure to Comply with Permit)**</div>

4 |      34.     Paragraphs 1 through 33 are incorporated herein by reference as if fully set forth

5 | below.

6 |      35.     EPA has promulgated NSPS for Pulp and Paper Mills at 40 C.F.R. Part 60,

7 | Subpart BB. Subpart BB applies to various types of equipment at kraft pulp mills, including

8 | smelt dissolving tanks, constructed or modified after September 24, 1976. 40 C.F.R. § 60.280.

9 |      36.     Section 60.282(a)(2) prohibits owners and operators of smelt dissolving tanks

10 | from emitting more than 0.2 pounds of particulate matter per ton of black liquor solids ("0.2

11 | lb/ton BLS") (dry weight).

12 |      37.     The Facility includes a smelt dissolver that was constructed or modified after

13 | September 24, 1976. The smelt dissolver is therefore subject to the particulate matter emission

14 | standard set forth in 40 C.F.R. § 60.282(a)(2) and included in the Facility's Title V permit. From

15 | at least January, 2005, through September 15, 2005, the Facility exceeded the particulate matter

16 | emission limit of 0.2 lb/ton BLS specified in Permit Number NP-074, Condition III.A.1 and 40

17 | C.F.R. § 60.282(a)(2).

18 |      38.     Under CAA Section 113(b), 42 U.S.C. § 7413(b), Defendant is subject to issuance

19 | of an injunction, requiring it to install an approved emission control system that allows it to

20 | comply with its Title V permit and the NSPS.

21 |      39.     Under CAA Section 113(b), 42 U.S.C. § 7413(b), and 40 C.F.R. Part 19,

22 | Defendant is liable for a civil penalty of up to $32,500 per day for each violation after March 15,

23 | 2004.

24 | <div align="center">**FOURTH CLAIM**</div>

25 | <div align="center">**(Failure to Comply with MACT Emission Limit for Smelt Dissolving Tanks)**</div>

26 |

27 |      40.     Paragraphs 1 through 39 are incorporated herein by reference as if fully set forth

28 | below.

Complaint for Civil Penalties
and Injunctive Relief

41.    EPA's regulations at 40 C.F.R. § 63.862(a)(1) require the owner or operator of an existing kraft pulp mill to comply with the following particulate matter emissions standard for smelt dissolving tanks:  0.20 pounds per ton of black liquor solids fired.

42.    EPA's regulations at 40 C.F.R. §§ 63.864(k)(2) and (k)(2)(ii) state that a smelt dissolver tank equipped with a wet scrubber is in violation of the emission standard of § 63.862(a)(1) if the monitoring exceedances occur when six or more three-hour average parameter values within any six-month reporting period are outside the range of values established in 40 C.F.R. § 63.864(j).  40 C.F.R. § 63.864(k)(3) states that no more than one exceedance will be attributed in any given 24-hour period.

43.    Evergreen violated 40 C.F.R. § 63.862(a)(1) by exceeding the particulate matter emissions standard for smelt dissolving tanks from March 8, 2005 until September 15, 2005, based upon performance testing conducted in November and December 2004, and on March 30-April 2, 2005.

44.    Evergreen violated 40 C.F.R. § 63.862(a)(1) by exceeding the particulate matter emissions standard for smelt dissolving tanks from November 21 through December 7, 2005, based upon parametric monitoring conducted between November 21-December 6, 2005.

45.    Under CAA Section 113(b), 42 U.S.C. § 7413(b), and 40 C.F.R. Part 19, Defendant is liable for a civil penalty of up to $32,500 per day for each violation after March 15, 2004.

**FIFTH CLAIM**
**(Failure to Comply with Initial Notification Requirements)**

46.    Paragraphs 1 through 45 are incorporated herein by reference as if fully set forth below.

47.    EPA's regulations at 40 C.F.R. §§ 63.9(b)(2) and 63.867(a)(1) require the owner or operator of an affected source or process unit to submit notifications of applicability to EPA within 120 days of the effective date of a relevant standard, such as Subpart MM.  Section 63.9(b)(2) specifies the information that must be contained in such a notice, including, but not limited to, "the source's compliance date."

Complaint for Civil Penalties
and Injunctive Relief

-6-

1        48.     Evergreen violated 40 C.F.R. §§ 63.9(b)(2) and 63.867(a)(1) by operating

2   affected sources without having submitted a complete initial notification of compliance.

3        49.     Under CAA Section 113(b), 42 U.S.C. § 7413(b), and 40 C.F.R. Part 19,

4   Defendant is liable for a civil penalty of up to $32,500 per day for each violation after March 15,

5   2004.

6                               **SIXTH CLAIM**
                **(Failure to Comply with Performance Testing Notification Requirements)**
7

8        50.     Paragraphs 1 through 49 are incorporated herein by reference as if fully set forth

9   below.

10       51.     EPA's regulations at 40 C.F.R. §§ 63.7(b) and 63.9(e) require the owner or

11  operator of an affected source or process unit to notify EPA at least 60 calendar days before the

12  test is scheduled to begin.  The purpose of this notification is to allow the Administrator the

13  opportunity to review and approve the site-specific test plan required under Section 63.7(c) and

14  to have an observer present during the test.

15       52.     Evergreen violated 40 C.F.R. §§ 63.7(b) and 63.9(e) by failing to notify EPA of

16  performance testing conducted on the recovery furnace, the smelt dissolving tank, and the lime

17  kiln on the following dates:  March 29-30, 2005; August 15 and 17-18, 2005; September 15,

18  2005; and October 19-20, 2005.

19       53.     Under CAA Section 113(b), 42 U.S.C. § 7413(b), and 40 C.F.R. Part 19,

20  Defendant is liable for a civil penalty of up to $32,500 per day for each violation after March 15,

21  2004.

22                             **SEVENTH CLAIM**
                **(Failure to Comply with Performance Testing Requirements)**
23

24       54.     Paragraphs 1 through 53 are incorporated herein by reference as if fully set forth

25  below.

26       55.     EPA's regulations at 40 C.F.R. §§ 63.7(a) and 63.865 require the owner or

27  operator of an affected source to conduct performance testing within 180 days of the compliance

28  date of the relevant standard.  During such testing, 40 C.F.R. § 63.864(j)(1) requires the owner or

                                                            Complaint for Civil Penalties
                                -7-                          and Injunctive Relief

1  operator to establish operating ranges for the monitoring parameters specified in 40 C.F.R.

2  §6.864(e)(10).

3    56.    Evergreen violated 40 C.F.R. §§ 63.7(a), 63.865, and 63.864(j)(1)  by operating

4  affected sources that were not source tested and for which parameter operating ranges were

5  established within 180 days of Subpart MM's compliance date.

6    57.    Under CAA Section 113(b), 42 U.S.C. § 7413(b), and 40 C.F.R. Part 19,

7  Defendant is liable for a civil penalty of up to $32,500 per day for each violation after March 15,

8  2004.

9                              **EIGHTH CLAIM**

10  **(Failure to Comply with Requirements for Startup, Shutdown, Malfunction Plans)**

11    58.    Paragraphs 1 through 57 are incorporated herein by reference as if fully set forth

12  below.

13    59.    EPA's regulations at 40 C.F.R. §§ 63.6(e)(3) and 63.866(a) require the owner or

14  operator of an affected source to develop and implement a written plan that contains specific

15  procedures to be followed for operating the source and maintaining the source during periods of

16  startup, shutdown, and malfunction, and a program of corrective action for malfunctioning

17  process and control systems used to comply with the standards.  Section 63.6(e)(3)(i) specifies

18  that the plan must be developed by the compliance date for the relevant standard.

19    60.    Section 63.866(a)(1) requires the SSM plan to contain procedures for addressing

20  exceedances of operating parameters established pursuant to Subpart MM.  Section 63.866(a)(2)

21  further requires the SSM plan to contain a maintenance schedule for each control technique and

22  an inspection schedule for each continuous monitoring system required by Subpart MM.

23    61.    Evergreen violated 40 C.F.R. §§ 63.6(e)(3) and 63.866(a) by operating affected

24  sources without a complete SSM plan.

25    62.    Under CAA Section 113(b), 42 U.S.C. § 7413(b), Defendant is subject to issuance

26  of an injunction, requiring it to submit a complete SSM plan to EPA.

27    63.    Under CAA Section 113(b), 42 U.S.C. § 7413(b), and 40 C.F.R. Part 19,

28  Defendant is liable for a civil penalty of up to $32,500 per day for each violation after March 15,

Complaint for Civil Penalties
and Injunctive Relief

1    2004.

2                              **NINTH CLAIM**
3         **(Failure to Comply with Alternative Monitoring Plan Requirements)**

4         64.    Paragraphs 1 through 63 are incorporated herein by reference as if fully set forth

5    below.

6         65.    EPA's regulations at 40 C.F.R. § 63.864(e)(14) require the owner or operator of

7    each affected source that uses an air pollution control system other than an electrostatic

8    precipitator, wet scrubber, regenerative thermal oxidizer, or fabric filter to provide to the

9    Administrator an alternative monitoring request that includes a description of the control device,

10   test results verifying the performance of the control device, the appropriate operating parameters

11   that will be monitored, and the frequency of measuring and recording to establish continuous

12   compliance with the standards.  The alternative monitoring request is subject to the

13   Administrator's approval.

14        66.    Evergreen violated 40 C.F.R. § 63.864(e)(14) by failing to submit a request to

15   EPA for alternative monitoring for the spray curtain used to control emissions from the smelt

16   dissolving tank.

17        67.    Under CAA Section 113(b), 42 U.S.C. § 7413(b), Defendant is subject to issuance

18   of an injunction, requiring it to submit an alternative monitoring request to EPA.

19        68.    Under CAA Section 113(b), 42 U.S.C. § 7413(b), and 40 C.F.R. Part 19,

20   Defendant is liable for a civil penalty of up to $32,500 per day for each violation after March 15,

21   2004.

22                              **TENTH CLAIM**
          **(Failure to Comply with Recordkeeping Requirements for**
23              **Corrective Actions and Violations)**

24        69.    Paragraphs 1 through 68 are incorporated herein by reference as if fully set forth

25   below.

26        70.    EPA's regulations at 40 C.F.R. § 63.866(b) require the owner or operator of an

27   affected source to maintain records of any occurrence when corrective action is required under §

28   63.864(k)(1) and when a violation is noted under § 63.864(k)(2).

                                              Complaint for Civil Penalties
                                                 and Injunctive Relief

71.    Evergreen violated 40 C.F.R. § 63.866(b) by failing to maintain records of corrective actions and violations with regard to the smelt dissolving tank and lime kiln.

72.    Under CAA Section 113(b), 42 U.S.C. § 7413(b), Defendant is subject to issuance of an injunction, requiring it to maintain records of corrective actions and violation with regard to the smelt dissolving tank and lime kiln.

73.    Under CAA Section 113(b), 42 U.S.C. § 7413(b), and 40 C.F.R. Part 19, Defendant is liable for a civil penalty of up to $32,500 per day for each violation after March 15, 2004.

**ELEVENTH CLAIM**
**(Failure to Comply with Parameter Monitoring Recordkeeping Requirements)**

74.    Paragraphs 1 through 73 are incorporated herein by reference as if fully set forth below.

75.    EPA's regulations at 40 C.F.R. §§ 63.10(c) and 63.866(c)(3) require the owner and operator of an affected source "to maintain records of parameter monitoring data required under Section 63.864, including any period when the operating parameter levels were inconsistent with the levels established during the initial performance test, with a brief explanation of the cause of the deviation, the time the deviations occurred, the time corrective action was initiated and completed, and the corrective action taken."

76.    Evergreen violated 40 C.F.R. §§ 63.10(c) and 63.866(c)(3) by failing to maintain records of parameter monitoring data with regard to the smelt dissolving tank and lime kiln until November 21, 2005 and by failing to maintain adequate records of parameter monitoring data from November 21 through December 7, 2005.

77.    Under CAA Section 113(b), 42 U.S.C. § 7413(b), Defendant is subject to issuance of an injunction, requiring it to maintain records of parameter monitoring data with regard to the smelt dissolving tank and lime kiln.

78.    Under CAA Section 113(b), 42 U.S.C. § 7413(b), and 40 C.F.R. Part 19, Defendant is liable for a civil penalty of up to $32,500 per day for each violation after March 15, 2004.

Complaint for Civil Penalties
and Injunctive Relief

## TWELFTH CLAIM
### (Failure to Comply with Record Retention Requirements)

79.     Paragraphs 1 through 78 are incorporated herein by reference as if fully set forth below.

80.     EPA's regulations at 40 C.F.R. § 63.10(b)(1) require the owner or operator of an affected source to maintain files of all required information to be recorded in a form suitable and readily available for expeditious inspection and review and to retain such files for at least five years.  40 C.F.R. § 63.864(e)(10) specifies the types of records that must be maintained for smelt dissolving tanks and lime kilns that rely on the use of wet scrubbers to control particulate matter emissions.  Specifically, Section 63.864(e)(10) requires recording of pressure drop across the scrubber and scrubbing liquid flow at least once every successive 15-minute period.

81.     Evergreen violated 40 C.F.R. § 63.10(b)(1) by failing to retain required records of parameter monitoring data for the smelt dissolving tank and lime kiln for a minimum of five years.

82.     Under CAA Section 113(b), 42 U.S.C. § 7413(b), Defendant is subject to issuance of an injunction, requiring it to retain records of parameter monitoring data for the smelt dissolving tank and lime kiln.

83.     Under CAA Section 113(b), 42 U.S.C. § 7413(b), and 40 C.F.R. Part 19, Defendant is liable for a civil penalty of up to $32,500 per day for each violation after March 15, 2004.

## THIRTEENTH CLAIM
### (Failure to Comply with Reporting Requirements)

84.     Paragraphs 1 through 83 are incorporated herein by reference as if fully set forth below.

85.     EPA's regulations at 40 C.F.R. §§ 63.10(e)(3) and 63.867(c) require the owner or operator of an affected source to submit quarterly excess emission and continuous monitoring system ("CMS") reports to the Administrator if measured parameters meet any of the conditions in Section 63.864(k)(2).  Alternatively, if no excess emissions have occurred, 40 C.F.R.

Complaint for Civil Penalties
and Injunctive Relief

1  §63.867(c)(1) requires the owner or operator to submit a semiannual report stating that no excess

2  emissions occurred during the reporting period.

3        86.    Evergreen violated 40 C.F.R. §§ 63.10(e)(3) and 63.867(c) by failing to submit

4  excess emission and CMS performance reports to EPA on or before April 30, 2005, July 30,

5  2005, October 30, 2005, and January 30, 2005.

6        87.    Under CAA Section 113(b), 42 U.S.C. § 7413(b), Defendant is subject to issuance

7  of an injunction, requiring it to submit excess emission and CMS performance reports to EPA.

8        88.    Under CAA Section 113(b), 42 U.S.C. § 7413(b), and 40 C.F.R. Part 19,

9  Defendant is liable for a civil penalty of up to $32,500 per day for each violation after March 15,

10  2004.

11                      **FOURTEENTH CLAIM**
                          **(Nuisance)**
12                    **(State Claim Only)**

13        89.    Paragraphs 1 through 88 are incorporated herein by reference as if fully set forth

14  below.

15        90.    California Health and Safety Code § 41700 and North Coast Rule 104 - 1.1

16  prohibit any person from discharging from any source such quantities of air contaminants which

17  cause injury, detriment, nuisance or annoyance to any considerable number of persons or to the

18  public, or which endanger the comfort, repose, health or safety of any such persons, or to the

19  public, or which cause, or have a tendency to cause, injury or damage to business or property.

20        91.    Evergreen has violated HSC § 41700 and North Coast Rule 104 - 1.1 on or about

21  August 3, 2005, August 4, 2005, and at various times during the period on or about August 20-

22  26, 2005, by emitting, or causing, or allowing the emissions of, noxious odors, soot, airborne

23  debris and other air contaminants from the Facility to injury, detriment, and annoyance to a

24  considerable number of persons and to the public, or which endanger the comfort, repose, health

25  or safety of such persons and public, or which cause injury or damage to business or property.

26        92.    Under HSC § 41513, Defendant may be enjoined from violating any provision of

27  Part 4, Division 26 of the Health and Safety Code or any order, rule, or regulation of the Air

28  Resources Board or North Coast.

93.    Under HSC §§ 42402 et seq., Defendant is liable for a civil penalty up to $25,000 for each violation.  Each day during any portion of which a violation occurs is a separate violation.

### FIFTEENTH CLAIM
**(Opacity)**
**(State Claim Only)**

94.    Paragraphs 1 through 93 are incorporated herein by reference as if fully set forth below.

95.    HSC § 41701 and North Coast Rule 104 - 2.1 prohibit the discharge of an air contaminant from any source into the atmosphere for a period or periods aggregating more than three minutes in any one hour which is as dark or darker in shade as that designated as No.2 on the Ringelmann Chart or is of such opacity as to obscure an observer's view to a degree equal to or greater than smoke as dark or darker in shade as that designated as No.2 on the Ringelmann Chart.

96.    Defendant has violated HSC § 41701 and North Coast Rule 104 - 2.1 on or about September 15, 2005, through October 25, 2005, by emitting, or causing, or allowing the emissions of air contaminants from the Facility into the atmosphere for a period or periods aggregating more than three minutes in any one hour which is as dark or darker in shade as that designated as No.2 on the Ringelmann Chart and is of such opacity as to obscure an observer's view to a degree equal to or greater than smoke as dark or darker in shade as that designated as No.2 on the Ringelmann Chart.

97.    Under HSC § 41513, Defendant may be enjoined from violating any provision of Part 4, Division 26 of the Health and Safety Code or any order, rule, or regulation of the Air Resources Board or North Coast.

98.    Under HSC §§ 42402 et seq., Defendant is liable for a civil penalty up to $25,000 for each violation.  Each day during any portion of which a violation occurs is a separate violation.

### SIXTEENTH CLAIM
**(Failure to Maintain Emissions Control Equipment for Smelt Dissolving Tank)**
**(State Claim Only)**

Complaint for Civil Penalties
and Injunctive Relief

-13-

99.    Paragraphs 1 through 98 are incorporated herein by reference as if fully set forth below.

100.    District-issued Authority to Construct ("ATC") permit #233-1, Condition 29, requires Defendant to maintain a constant pressure of 135 gpm across the spray curtain while operating the smelt dissolving tank.

101.    Defendant has violated ATC permit #233-1, Condition 29, on or about August 11, 2005 through September 30, 2005 by failing to maintain a constant pressure of 135 gpm across the spray curtain while operating the smelt dissolving tank.

102.    Under HSC § 41513, Defendant may be enjoined from violating any provision of Part 4, Division 26 of the Health and Safety Code or any order, rule or regulation of the Air Resources Board or North Coast.

103.    Under HSC §§ 42402 et seq., Defendant is liable for a civil penalty up to $10,000 for each violation.  Each day during any portion of which a violation occurs is a separate violation.

### SEVENTEENTH CLAIM
**(Failure to Maintain Emissions Control Equipment for Smelt Dissolving Tank)**
**(State Claim Only)**

104.    Paragraphs 1 through 103 are incorporated herein by reference as if fully set forth below.

105.    District-issued Authority to Construct ("ATC") permit #233-1, Condition 30, requires Defendant to install and maintain a continuous pH meter within the wet scrubber of the smelt dissolving tank.

106.    Defendant has violated ATC permit #233-1, Condition 30 on or about August 1, 2005, through November 15, 2005, by failing to install and maintain a continuous pH meter within the wet scrubber of the smelt dissolving tank during the time period of August through mid-November, 2005.

107.    Under HSC § 41513, Defendant may be enjoined from violating any provision of Part 4, Division 26 of the Health and Safety Code or any order, rule, or regulation of the Air

Complaint for Civil Penalties
and Injunctive Relief

1    Resources Board or North Coast.

2        108.    Under HSC §§ 42402 et seq., Defendant is liable for a civil penalty up to $10,000

3    for each violation.  Each day during any portion of which a violation occurs is a separate

4    violation.

5                        **EIGHTEENTH CLAIM**

         **(Failure to Maintain Emissions Control Equipment; Recovery Boiler)**

6                        **(State Claim Only)**

7        109.    Paragraphs 1 through 108 are incorporated herein by reference as if fully set forth

8    below.

9        110.    District-issued Permit to Operate # NCU 037-12, Part VI.B. of NP072 (Recovery

10   Boiler) requires Defendant to maintain all emissions control equipment, including the

11   electrostatic precipitator, in full operation, and to maintain such control equipment in a condition

12   which can be assured to control particulate matter emissions to within permitted limits.

13       111.    Defendant has violated NCU 037-12, Part IV.B of NP072 at various times on or

14   about February 25, 2005, through November 15, 2005 by failing to repair meters, gauges and/or

15   other indicators regarding operation of the electrostatic precipitator necessary to determine

16   compliance with permitted particulate matter emissions limits.

17       112.    Under HSC § 41513, Defendant may be enjoined from violating any provision of

18   Part 4, Division 26 of the Health and Safety Code or any order, rule, or regulation of the Air

19   Resources Board or North Coast.

20       113.    Under HSC §§ 42402 et seq., Defendant is liable for a civil penalty up to $10,000

21   for each violation.  Each day during any portion of which a violation occurs is a separate

22   violation.

23                        **NINETEENTH CLAIM**

         **(Failure to Maintain Emissions Control Equipment; Lime Kiln)**

24                        **(State Claim Only)**

25       114.    Paragraphs 1 through 113 are incorporated herein by reference as if fully set forth

26   below.

27       115.    District-issued Permit to Operate # NCU 037-12, Part IV.A.3 of NP073 (Lime

28   Kiln) requires Defendant to operate and maintain a continuous emissions monitoring system

Complaint for Civil Penalties
and Injunctive Relief

1  (CEMS) for a determination of total reduced sulfur emitted from the Lime Kiln, in conformance

2  with 40 C.F.R. Part 60, Appendix F, Quality Assurance Procedures.

3       116.    Defendant has violated NCU 037-12, Part IV.A.3 of NP073 beginning on or about

4  February 25, 2005, by operating the Lime Kiln without a Quality Assurance, Quality Control

5  (QA/QC) Plan, as required by 40 C.F.R. Part 60, Appendix F.

6       117.    Under HSC § 41513, Defendant may be enjoined from violating any provision of

7  Part 4, Division 26 of the Health and Safety Code or any order, rule, or regulation of the Air

8  Resources Board or North Coast.

9       118.    Under HSC §§ 42402 et seq., Defendant is liable for a civil penalty up to $10,000

10  for each violation.  Each day during any portion of which a violation occurs is a separate

11  violation.

12  <center>**TWENTIETH CLAIM**</center>

13  <center>**(Failure to Maintain Emissions Control Equipment; Recovery Boiler)**
<center>**(State Claim Only)**</center>

14       119.    Paragraphs 1 through 118 are incorporated herein by reference as if fully set forth

15  below.

16       120.    District-issued Permit to Operate # NCU 037-12, Part IV.A.3 of NP072 (Recovery

17  Boiler) requires Defendant to operate and maintain a continuous emissions monitoring system

18  (CEMS) for a determination of total reduced sulfur, sulfur dioxide, carbon monoxide, and

19  nitrogen oxides from the Recover Boiler furnace, in conformance with 40 C.F.R. Part 60,

20  Appendix F, Quality Assurance Procedures.

21       121.    Defendant has violated NCU 037-12, Part IV.A.3 of NP072 beginning on or about

22  February 25, 2005, by operating the Recovery Boiler furnace without a Quality Assurance,

23  Quality Control (QA/QC) Plan, as required by 40 C.F.R. part 60, Appendix F.

24       122.    Under HSC § 41513, Defendant may be enjoined from violating any provision of

25  Part 4, Division 26 of the Health and Safety Code or any order, rule or regulation of the Air

26  Resources Board or North Coast.

27       123.    Under HSC §§ 42402 et seq., Defendant is liable for a civil penalty up to $10,000

28  for each violation.  Each day during any portion of which a violation occurs is a separate

Complaint for Civil Penalties
and Injunctive Relief

1    violation.

2    **REQUEST FOR RELIEF**

3    WHEREFORE, Plaintiffs respectfully request that the Court grant the following relief:

4    A.    Assess a civil penalty against Defendant of up to $32,500 per day for each

5    violation as alleged in the first through thirteenth claims for relief in this complaint;

6    B.    Assess a civil penalty against Defendant of $ 25,000 per day for each violation as

7    alleged in the fourteenth and fifteenth claims for relief in this complaint, and $10,000 per day for

8    each violation as alleged in the sixteenth through twentieth claims for relief in this complaint;

9    C.    Issue an order compelling Defendant immediately to undertake all actions

10    necessary to ensure that it achieves and maintains compliance with the Clean Air Act, the

11    California Health and Safety Code, and any order, rule or regulation of the Air Resources Board

12    or North Coast;

13    D.    Award the Plaintiffs their costs and fees incurred in this action; and

14    E.    Grant such other relief as is deemed just and proper.

15

16                                    Respectfully submitted,

17                                    For Plaintiff the UNITED STATES OF AMERICA,

18                                    RONALD J. TENPAS
                                      Acting Assistant Attorney General
19                                    Environment and Natural Resources Division

20

21    By:    _____
22           ELLEN MAHAN
              Deputy Section Chief
23           Environment and Natural Resources Division
              United States Department of Justice
24

25

26           _____
              ANN C. HURLEY
27           Environmental Enforcement Section
              Environment and Natural Resources Division
28           United States Department of Justice

                                    Complaint for Civil Penalties
                        -17-          and Injunctive Relief

1

2

3      OF COUNSEL:

4      KARA CHRISTENSON
       Senior Counsel
5      U.S. Environmental Protection Agency, Region 9
       75 Hawthorne Street
6      San Francisco, California 94105

7

8

9                                          For Plaintiff CALIFORNIA AIR RESOURCES
                                               BOARD
10

11

12                                          _____
                                            ANITA E. RUUD
13                                          Deputy Attorney General
                                            California Office of the Attorney General
14

15     OF COUNSEL:

16     GEORGE T. POPPIC, JR.
       Senior Counsel
17     Air Resources Board
       P.O. Box 2815
18     Sacramento, California 95812

19

20

21

22

23

24

25

26

27

28

Complaint for Civil Penalties
and Injunctive Relief

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

For Plaintiff NORTH COAST UNIFIED AIR
QUALITY MANAGEMENT DISTRICT


NANCY DIAMOND
Law Offices of Nancy Diamond
822 G Street, Suite 3
Arcata, CA  95521

Complaint for Civil Penalties
and Injunctive Relief