1   RONALD J. TENPAS
    Acting Assistant Attorney General
2   Environment and Natural Resources Division
    U.S. Department of Justice
3

4   ELLEN MAHAN
    Deputy Chief
    Environmental Enforcement Section
5   ANN C. HURLEY, DC Bar No. 375676
    Trial Attorney
6   Environmental Enforcement Section
    U.S. Department of Justice
7   301 Howard Street, Suite 1050
    San Francisco, CA 94105
8   Tel: (415) 744-6480
    Fax: (415) 744-6476
9   E-mail: ann.hurley@usdoj.gov

10   Attorneys for Plaintiff United States of America

11   (Additional Attorneys on Next Page)

12

13

14

15

**RECEIVED**

OCT - 2 2007

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFOR

SBA

16   **UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

**C 07 5067**

17   UNITED STATES OF AMERICA, the
    PEOPLE OF THE STATE OF
18   CALIFORNIA, *ex rel.* CALIFORNIA
    AIR RESOURCES BOARD, and NORTH
19   COAST UNIFIED AIR QUALITY
    MANAGEMENT DISTRICT,

20                 CIV. NO.

21         Plaintiffs,       CONSENT DECREE

22           v.

23   EVERGREEN PULP, INC.,

24         Defendant

25

26

27

28

                                    Consent Decree

1  EDWIN G. BROWN JR.
   Attorney General of the State of California
2  MARY HACKENBRACHT, Assistant Attorney General
   JOHN DAVIDSON, Supervising Attorney General
3  ANITA E. RUUD, Deputy Attorney General CA Bar No. 072483
   Office of the California Attorney General
4  455 Golden Gate Avenue, Suite 11000
   San Francisco, CA 94102
5  Tel: (415) 703-5533
   Fax: (415) 703-5480
6  E-mail: Anita.Ruud@doj.ca.gov

7  Attorneys for Plaintiff California Air Resources Board

8

9  NANCY DIAMOND CA Bar No. 130963
   Law Offices of Nancy Diamond
   822 G Street, Suite 3
10 Arcata, CA  95521
   Tel: (707) 826-8540
11 Fax: (707) 826-8541
   E-mail: ndiamond@humboldt1.com

12

13 Attorney for Plaintiff North Coast Unified Air Quality Management District

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Consent Decree

Concurrently with the lodging of this Consent Decree, the United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), the California Air Resources Board ("ARB") and the North Coast Unified Air Quality Management District ("North Coast" or "District") (collectively, the "Plaintiffs") have filed a Complaint in this action pursuant to Section 113 of the Clean Air Act (the "CAA"), 42 U.S.C. § 7413, California Health and Safety Code § 42403, and North Coast Unified Air Quality Management District Rule 105 alleging that Defendant Evergreen Pulp, Inc. ("Defendant" or "Evergreen)" violated the CAA, California state law and District regulations at its kraft pulp mill in Samoa, Humboldt County, California (the "Facility").

The Complaint alleges that Defendant has failed to comply with applicable CAA requirements, including, but not limited to, its operating permit issued by North Coast pursuant to Title V of the CAA, 42 U.S.C. § 7661a-7661f; the New Source Performance Standards applicable to Pulp and Paper Mills, 40 C.F.R. Part 60, Subpart BB; and the National Emissions Standards for Hazardous Air Pollutants ("NESHAPs"), General Provisions, and as applicable to Chemical Recovery Combustion Sources at Kraft Pulp Mills, 40 C.F.R. Part 63, Subparts A and MM, Part 4 of Division 26 of the California Health and Safety Code and the Rules and Regulations of the North Coast Unified Air Quality Management District.

Defendant denies any liability to the Plaintiffs arising out of the transactions or occurrences alleged in the Complaint.

The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section I (JURISDICTION AND VENUE) below, and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I. JURISDICTION AND VENUE

1.     This Court has jurisdiction over the subject matter of this action, pursuant to 28

-1-

Consent Decree

1  U.S.C. §§ 1331, 1345, 1355, and 1367, and Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and

2  over the Parties. Venue lies in this District pursuant to 42 U.S.C. § 7413(b), and 28 U.S.C. §§

3  1391(b) and (c) and 1395(a), because the violations alleged in the Complaint occurred in, and

4  Defendant conducts business in, this judicial District. For purposes of this Decree, or any action

5  to enforce this Decree, Defendant consents to the Court's jurisdiction over this Decree or such

6  action and over Defendant, and consents to venue in this judicial District.

7      2.      Notice of the commencement of this action has been given to the State of

8  California, as required by Section 113(b) of the CAA, 42 U.S.C. § 7413(b).

9                          II. APPLICABILITY

10     3.      The obligations of this Consent Decree apply to and are binding upon the United

11 States, ARB and North Coast, and upon Defendant and any successors, assigns, or other entities

12 or persons otherwise bound by law.

13     4.      No transfer of ownership or operation of the Facility, in whole or in part, whether

14 in compliance with this Paragraph or otherwise, shall relieve Defendant of its obligation to

15 ensure that the terms of the Decree are implemented. Notwithstanding the foregoing, EPA,

16 North Coast and ARB may agree to relieve Defendant of all or a portion of its obligation to

17 comply with the terms of this Decree if: (1) the transferee agrees to undertake the obligations

18 required by the Consent Decree and to be substituted for Defendant as a party under the Decree

19 and be thus bound by the terms thereof, and (2) EPA, North Coast and ARB approve such

20 transferee. EPA, North Coast and ARB may request information regarding the transferee's

21 financial ability to assume such obligations and compliance history prior to granting such

22 approval. EPA, North Coast and ARB may condition such approval upon terms they deem

23 appropriate. At least thirty (30) days prior to such transfer, Defendant shall provide a copy of

24 this Consent Decree to the proposed transferee and shall simultaneously provide written notice of

25 the prospective transfer to EPA, the United States Department of Justice ("DOJ"), ARB and

26 North Coast in accordance with Section XII (NOTICES) of this Decree. Any attempt to transfer

27 ownership or operation of the Facility without complying with this Paragraph constitutes a

28 violation of this Decree.

Consent Decree

5.      Defendant shall provide a copy of this Consent Decree to all officers, employees, and agents whose duties might reasonably include compliance with any provision of this Decree, as well as to any contractor retained to perform work required under this Consent Decree. Defendant shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

6.      In any action to enforce this Consent Decree, Defendant shall not raise as a defense the failure by any of its officers, directors, employees, agents or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

## III. CIVIL PENALTY

7.      Within thirty (30) days after this Consent Decree is entered by this Court, Defendant shall pay the sum of three hundred thousand dollars ($300,000) as a civil penalty to the United States. Payment shall be made by Electronic Funds Transfer ("EFT") to the U.S. Department of Justice in accordance with instructions to be provided to Defendant, following lodging of the Consent Decree, by the Financial Litigation Unit of the U.S. Attorney's Office for the Northern District of California. At the time of payment, Defendant shall simultaneously send written notice of payment (referencing DOJ case number 90-5-2-1-08786 and the case name and civil action number of this case), and a copy of any transmittal documentation to EPA and DOJ in accordance with Section XII (NOTICES) of this Decree.

8.      Within thirty (30) days after this Consent Decree is entered by this Court, Defendant shall pay the sum of three hundred thousand dollars ($300,000) as a civil penalty to ARB. Such payment shall be made to the Air Resources Board Air Pollution Control Fund and sent to the party designated to receive notice under Paragraph 63 below with a copy of the transmittal of such payment to ARB counsel also designated in Paragraph 63.

9.      Within thirty (30) days after this Consent Decree is entered by this Court, Defendant shall pay the sum of three hundred thousand dollars ($300,000) as a civil penalty to North Coast. Payment shall be made by EFT to the North Coast Unified Air Quality Management District in accordance with account and routing instructions that shall be provided by North Coast to Defendant following lodging of the Consent Decree. At the time of payment,

-3-

Consent Decree

1    Defendant shall simultaneously send written notice of payment and a copy of any transmittal

2    documentation to North Coast in accordance with Section XII (NOTICES) of this Decree.

3                              IV.  COMPLIANCE REQUIREMENTS

4            10.     Upon the date this Consent Decree is entered by this Court (the "Effective Date"),

5    Evergreen shall be in compliance with 40 C.F.R. Part 63, Subparts A and MM for the recovery

6    boiler and smelt dissolving tank ("SDT").

7            11.     By April 26, 2007, Evergreen shall be in compliance with 40 C.F.R. Part 63,

8    Subparts A and MM for the lime kiln.

9            12.     Emission Limits for Smelt Dissolving Tank Exhaust Stack: Evergreen shall not

10    exceed the following emission limits:

11            Particulate Matter: 0.20 pounds per ton of black liquor solids ("BLS") pursuant to

12    North Coast State Implementation ("SIP") Regulation 1-4, Rule 420(d) and 40 C.F.R. §§

13    60.282(a)(2) and 63.862(a)(i)(B).

14            13.     Operational Requirements for Smelt Dissolving Tank Wet Scrubber and Spray

15    Curtain: Evergreen shall maintain and operate the wet scrubber and spray curtain to control

16    particulate emissions from the smelt dissolving tank in accordance with the requirements set

17    forth in Paragraphs 28 through 34 of the revised Authority to Construct Permit No. 000-233-1

18    issued by North Coast on January 20, 2006 (attached hereto as Appendix A).  The obligation in

19    this paragraph to maintain and operate the wet scrubber and spray curtain shall cease, however, if

20    and when Evergreen commences to control particulate matter emissions from the smelt

21    dissolving tank with new or different emissions control equipment, provided that Evergreen

22    meets all local, state and federal requirements applicable to the modification.

23            14.     Monitoring, Reporting and Recordkeeping for Smelt Dissolving Tank Emissions:

24    Unless or until such Authority to Construct Permit is modified, terminated or revoked by North

25    Coast, Evergreen shall comply with the monitoring, reporting and recordkeeping requirements of

26    Paragraph 43 through 57 of the revised Authority to Construct Permit issued by North Coast on

27    January 20, 2006  (Appendix A).

28            15.     Alternative Monitoring Plan for Smelt Dissolving Tank: Upon the Effective Date

                                            -4-                          Consent Decree

of this Consent Decree, Evergreen shall have submitted to EPA, North Coast and ARB an alternative monitoring plan for the smelt dissolving tank spray curtain, pursuant to 40 C.F.R. § 63.864(e)(14).

16.    ESP for Lime Kiln:  As part of the consideration for this settlement, Evergreen installed an electrostatic precipitator ("ESP") to control particulate matter emissions from the lime kiln.  Evergreen commenced operation of the ESP on April 26, 2007, and conducted an initial performance test of the ESP between May 22-28, 2007.

a.    Evergreen shall demonstrate compliance with the particulate emission standard using EPA Method 5 and CARB Method 5 pursuant to Paragraph 66(a)(i)-(iv) and (b)(i)-(iv) of the Authority to Construct Permit # 000348-1 dated November 8, 2006 ("2006 ATC") (Appendix B hereto).  Evergreen submitted a copy of the performance test results to EPA, North Coast, and ARB within sixty (60) days following completion of the performance test.

b.    Evergreen shall complete optimization testing by June 20, 2007, as set forth in Paragraphs 59-62 of the 2006 ATC (Appendix B hereto).  A copy of the report that describes the results of the optimization testing was submitted to EPA, North Coast, and ARB within sixty (60) days following completion of the testing.

17.    Emission Limits for Lime Kiln Exhaust Stack:  Beginning on April 26, 2007, Evergreen shall not exceed any of the following emission limits:

a.    Particulate Matter: 0.064 grains ("gr") per dry standard cubic foot ("dscf") (corrected to 10% oxygen) pursuant to 40 C.F.R. § 63.862(a)(i)(c)).

b:    Opacity:

i.    20 percent for 6 percent or more of the operating time within any quarterly period pursuant to 40 C.F.R. § 63.864(k)(2);

ii.    40 percent for 3 minutes in any one hour pursuant to North Coast SIP Regulation 1-4, Rule 410(a).

18.    Continuous Opacity Monitoring System ("COMS") for Lime Kiln Exhaust Stack: Evergreen shall install, maintain and operate a COMS for the Lime Kiln Exhaust Stack according to the following schedule:

Consent Decree

.

1   Evergreen shall request authorization from North Coast to terminate operation of the HydroMist

2   quench lance system.  A copy of the request shall be sent to ARB and EPA.  Such request shall

3   include a description of why the quench lance system is not needed to comply with the applicable

4   emission limits for the lime kiln.  Use of the quench lance system shall not be terminated without

5   the affirmative approval of North Coast.

6       20.    Record Retention:  No later than the Effective Date of this Consent Decree,

7   Evergreen shall be in compliance with the record retention requirements of 40 C.F.R. §§

8   63.10(b)(1) and 63.866(c)(3) for records of pressure drop and scrubbing liquid flow rate at the

9   scrubber for the smelt dissolving tank, provided, however, that Evergreen shall not be required to

10  be in possession, on or after the Effective Date, of such records that were not retained before

11  August 31, 2006.

12      21.    Startup, Shutdown and Malfunction Plan:

13      a.    Upon the Effective Date of this Consent Decree, Evergreen shall have submitted

14  to EPA, North Coast, and ARB a startup, shutdown and malfunction plan ("SSM Plan"), as

15  required by 40 C.F.R. § 63.866(a), for the recovery boiler, the smelt dissolving tank and the lime

16  kiln.  The submitted SSM Plan shall include an update to address the SDT spray curtain and the

17  Lime Kiln ESP and, as applicable, the HydroMist quench lance system.

18      b.    Upon the Effective Date of this Consent Decree, Evergreen will have prepared

19  and submitted to EPA, North Coast and ARB an updated SSM Plan for the Lime Kiln ESP.

20      22.    Recordkeeping and Reporting:  Upon the Effective Date of this Consent Decree,

21  Evergreen shall comply with applicable recordkeeping and reporting requirements of 40 C.F.R.

22  Part 63, Subparts A and MM.

23      23.    Continuous Emission Monitoring System (CEMS) and COMS Requirements:

24      a.    No later than the Effective Date of this Consent Decree, Evergreen shall send a

25  notice to EPA, ARB and North Coast certifying that the operation of the recovery boiler and lime

26  kiln CEMS meets the requirements of 40 C.F.R. Part 60, Appendices B and F, including current

27  Quality Assurance ("QA")/Quality Control ("QC") plans, performance of quarterly gas audits,

28  COMS quarterly audits, calibration drift tests, and annual relative accuracy test audit.  This

-7-                                               Consent Decree

1   notification shall contain the certification statement required by Paragraph 27 of this Decree.

2        b.     No later than the Effective Date of this Consent Decree, Evergreen shall send a

3   notice to EPA, ARB and North Coast certifying that a quality control program and plan has been

4   developed and implemented for the recovery boiler COMS that meets the requirements set forth

5   in 40 C.F.R. § 63.8(d). This notification shall contain the certification statement required by

6   Paragraph 27 of this Decree.

7        c.     Evergreen shall certify that a quality control program and plan has been developed

8   and implemented for the lime kiln COMS that meets the requirements set forth in 40 C.F.R. §

9   63.8(d) by September 5, 2007.

10       24.    <u>Permits.</u> When any compliance obligation under this Section requires Defendant

11  to obtain a federal, state, or local permit or approval, Defendant shall submit timely applications

12  and timely provide additional information as requested by the permitting authority to make its

13  applications complete, and take all other actions reasonably necessary to obtain all such permits

14  or approvals. Defendant may seek relief under the provisions of Section VII (FORCE

15  MAJEURE) of this Consent Decree for any delay in the performance of any such obligation

16  resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to

17  fulfill such obligation, if Defendant has submitted timely and complete applications and, in

18  accordance with the foregoing, has taken all other actions reasonably necessary to obtain all such

19  permits or approvals. This Paragraph shall not relieve Defendant of any obligation arising under

20  federal, state or local rule or regulation pertaining to permit approval. Nothing in this Decree

21  shall impair Evergreen's right to appeal a permit or approval, or permit or approval condition,

22  pursuant to applicable appeal procedures, except that Evergreen shall not challenge any condition

23  of a permit or approval that is also a provision of this Consent Decree. Subject to this limitation

24  the time for performance of provisions of this Consent Decree that require Evergreen to obtain a

25  federal, state, or local permit or approval shall be tolled during the pendency of an appeal.

26                    V.  <u>REPORTING REQUIREMENTS</u>

27       25.    Defendant shall submit the following reports, commencing on the Effective Date

28  of this Consent Decree:

1          a.          Within thirty (30) days after the end of each calendar-year quarter (*i.e.*,

2    by April 30, July 30, October 30, and January 30) after the Effective Date of this Consent Decree,

3    until termination of this Decree pursuant to Section XVI (TERMINATION), Defendant shall

4    submit to EPA, North Coast and ARB a quarterly report for the preceding quarter that shall

5    summarize:  the status of any construction or compliance measures (e.g., permitting process,

6    anticipated start-up of operation, testing, etc.); completion of milestones; problems encountered

7    or anticipated, together with implemented or proposed solutions; and status of permit

8    applications.  At the time a quarterly report is submitted to EPA and ARB, Defendant shall

9    submit to EPA and ARB a copy of all reports submitted to North Coast during the quarterly

10   period if these reports have not been previously provided to EPA and ARB.

11          b.          Defendant shall notify EPA, North Coast and ARB in a written

12   report, within five (5) business days of the day Defendant first becomes aware of a violation of

13   any requirement of this Consent Decree, and shall identify its duration or, as applicable, likely

14   future duration, with an explanation of the violation's likely cause and of the remedial steps

15   taken, or to be taken, to prevent or minimize such violation.  If the cause of a violation cannot be

16   fully explained at the time this report is due, Defendant shall so state in the report.  Defendant

17   shall investigate the cause of the violation and shall then submit an amendment to the report,

18   including a full explanation of the cause of the violation, within thirty (30) days of the day

19   Defendant becomes aware of the cause of its violation.  Nothing in this Paragraph relieves

20   Defendant of its obligation to provide the notice required by Section VII (FORCE MAJEURE) of

21   this Consent Decree.

22          26.          All reports shall be submitted to the persons designated in

23   Section XII (NOTICES) of this Consent Decree.

24          27.          Each report submitted by Defendant under this Section shall be signed by an

25   official of the submitting party and include the following certification:

26          I certify under penalty of law that I have examined and am familiar with the information
     submitted in this document and all attachments and that this document and its attachments were
27   prepared either by me personally or under my direction or supervision in a manner designed to
     ensure that qualified and knowledgeable personnel properly gather and present the information
28   contained therein.  I further certify, based on my personal knowledge or on my inquiry of those

-9-                                              Consent Decree

individuals immediately responsible for obtaining the information, that the information is true, accurate and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fines and imprisonment for knowingly and willfully submitting a materially false statement.

This certification requirement does not apply to emergency or similar notifications where compliance would be impractical.

28.     The reporting requirements of this Consent Decree do not relieve Defendant of any reporting obligations required by the CAA or implementing regulations, or by any other federal, state, or local law, regulation, permit, or other requirement.

## VI. STIPULATED PENALTIES

29.     If Defendant fails to pay the civil penalty required to be paid under Paragraph 7 of this Decree when due, Defendant shall pay a stipulated penalty of five thousand dollars ($5000) per day for each day that the payment is late. All transmittal correspondence shall state that any such payment is for stipulated penalties for late payment, and shall include the identifying information set forth in Paragraph 7.

30.     If Defendant fails to pay the civil penalty required to be paid under Paragraph 8 of this Decree when due, Defendant shall pay a stipulated penalty of five thousand dollars ($5000) per day for each day that the payment is late. All transmittal correspondence shall state that any such payment is for stipulated penalties for late payment, and shall include the identifying information set forth in Paragraph 8.

31.     If Defendant fails to pay the civil penalty required to be paid under Paragraph 9 of this Decree when due, Defendant shall pay a stipulated penalty of five thousand dollars ($5000) per day for each day that the payment is late. All transmittal correspondence shall state that any such payment is for stipulated penalties for late payment, and shall include the identifying information set forth in Paragraph 9.

32.     Defendant shall be liable for stipulated penalties to the United States, ARB and North Coast to the extent that any or all of these Agencies joins in a written demand for and is entitled to payment of stipulated penalties for violations of this Consent Decree as specified below, unless excused under Section VII (FORCE MAJEURE). A violation includes failing to

-10-                                                    Consent Decree

perform any obligation required by the terms of this Decree, including any work plan or schedule approved under this Decree, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.

| Consent Decree Violation | Stipulated Penalty (Per day per violation unless otherwise specified) |
|---|---|
| Failure to comply with particulate matter emission limits in Paragraph 17 after April 25, 2007 | $1,000 for the 1st through 45th day<br>$2,500 for the 45th through 60th day<br>$10,000 for the 61st day and each day beyond |
| Except as provided above, failure to comply with particulate matter emission limits in Paragraphs 12 and 17 | $2,500 for the 1st through 14th day<br>$5,000 for the 15th through 30th day<br>$10,000 for the 31st day and each day beyond |
| Failure to comply with 20% opacity limit in Paragraph 17(b)(i) | $50,000 per quarter |
| Failure to comply with 40% opacity limit in Paragraph 17(b)(ii) | $5,000 for each hour |
| Failure to comply with any compliance milestone in Paragraph 16 with regard to installation, testing, maintenance, and operation of an ESP | $2,500 for the 1st through 14th day<br>$5,000 for the 15th through 30th day<br>$10,000 for the 31st day and each day beyond |
| Failure to comply with any compliance milestone in Paragraph 18 (a) or (b) with regard to installation, operation and certification of COMS | $2,500 for the 1st through 14th day<br>$5,000 for the 15th through 30th day<br>$10,000 for the 31st day and each day beyond |
| Failure to comply with any requirement in Paragraphs 13 or 14 | $5,000 |
| Failure to timely submit Alternative Monitoring Plan for the SDT spray lance system as required by Paragraph 15 | $1,000 |
| Failure to comply with any requirement in Paragraph 19 regarding the Lime Kiln quench system | $1,000 |
| Failure to comply with record retention requirements in Paragraph 20 | $1,000 |

-11-

| | |
|---|---|
| Failure to timely submit SSM plan as required by Paragraph 21 | $1,000 |
| Failure to comply with recordkeeping and reporting requirements in Paragraph 22 | $1,000 |
| Failure to timely certify to CEMS and COMS requirements as required by Paragraph 23 | $1,000 |
| Failure to comply with any reporting requirement in Section V (REPORTING REQUIREMENTS) of this Consent Decree | $1,000 for the 1st through 14th day<br>$2,500 for the 15th through 30th day<br>$5,000 for the 31st day and each day beyond |
| Any other violation of this Consent Decree | $1,000 |

33.     Stipulated penalties assessed pursuant to this Section VI (STIPULATED PENALTIES) shall begin to accrue on the day after performance is due or on the day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases.  Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.  Except as otherwise provided in this Decree, Defendant shall pay any stipulated penalties within thirty (30) days of receiving the Plaintiffs' written demand.

34.     Either the United States, ARB or North Coast may seek stipulated penalties under Paragraph 32.  Plaintiffs who seek stipulated penalties under Paragraph 32 shall make their written demand therefor jointly.  Where more than one of the Plaintiffs seek stipulated penalties for the same violation of this Consent Decree, Defendant shall divide the payment of stipulated penalties equally among the Plaintiffs seeking stipulated penalties, and shall make payment in accordance with the instructions in Paragraphs, 7, 8, and 9 of this Consent Decree.

35.     The United States, ARB or North Coast may, in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

36.     Stipulated penalties shall continue to accrue during any dispute resolution conducted pursuant to Section VIII (DISPUTE RESOLUTION), but need not be paid until the following:

a.     If the dispute is resolved by agreement or by a decision of EPA, ARB and North Coast that is not appealed to the Court, Defendant shall pay accrued penalties determined or

-12-

1  agreed to be owing, together with interest, to the Plaintiffs that have demanded stipulated

2  penalties within thirty (30) days of the date of the agreement or decision.

3       b.     If the dispute is appealed to the Court and the Plaintiffs prevail in whole or in part,

4  Defendant shall pay all accrued penalties determined by the Court to be owing, together with

5  interest, within sixty (60) days of receiving the Court's decision or order, except as provided in

6  Subparagraph c, below.

7       c.     If any party appeals the District Court's decision, Defendant shall pay all accrued

8  penalties determined to be owing, together with interest, within fifteen (15) days of receiving the

9  final appellate court decision.

10       37.     Defendant shall pay stipulated penalties in accordance with instructions in

11  Paragraphs 7, 8 and 9 of this Consent Decree as applicable.  If Defendant fails to pay stipulated

12  penalties according to the terms of this Consent Decree, Defendant shall be liable for interest on

13  such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due.

14       38.     The stipulated penalties provided for in this Consent Decree shall be in addition to

15  any other rights, remedies, or sanctions available to the Plaintiffs for Defendant's violation of

16  this Consent Decree or applicable law.  Where a violation of this Decree is also a violation of the

17  Clean Air Act, the Health & Safety Code, or North Coast Rules and Regulations, Defendant shall

18  be allowed a credit, for any stipulated penalties paid, against any statutory penalties imposed for

19  such violation.

20                          VII.  FORCE MAJEURE

21       39.     A "force majeure event" is any event beyond the control of Defendant, its

22  contractors, or any entity controlled by Defendant that delays or prevents the performance of any

23  obligation under this Consent Decree despite Defendant's best efforts to fulfill the obligation.

24  "Best efforts" includes anticipating any potential force majeure event and addressing the effects

25  of any such event (a) as it is occurring and (b) after it has occurred, to prevent or minimize any

26  resulting delay to the greatest extent possible.  "Force Majeure" does not include Defendant's

27  financial inability to perform any obligation under this Consent Decree.  The determination that

28  an event is a force majeure event under this Consent Decree shall not alter or amend any other

1  applicable term, requirement or condition in any permit or federal, state, or local law, rule or

2  regulation ("Applicable Requirements").

3      40.    Defendant shall provide notice to EPA, ARB and North Coast orally or by

4  electronic or facsimile transmission as soon as possible, but not later than 72 hours after the time

5  Defendant first knew of, or by the exercise of due diligence, should have known of, a claimed

6  force majeure event.  Defendant shall also provide written notice to EPA, ARB and North Coast

7  within seven (7) days of the time Defendant first knew of, or by the exercise of due diligence,

8  should have know of, the event.  The notice shall state the anticipated duration of any delay; its

9  cause(s); Defendant's past and proposed actions to prevent or minimize any delay; a schedule for

10  carrying out those actions; and Defendant's rationale for attributing any delay to a force majeure

11  event.  Failure to provide oral and written notice as required by this Paragraph shall preclude

12  Defendant from asserting any claim of force majeure.

13      41.    If the EPA, ARB and North Coast (the "Agencies") collectively agree that a force

14  majeure event has occurred, the Agencies may agree to extend the time for Defendant to perform

15  the affected requirements for the time necessary to complete those obligations.  An extension of

16  time to perform the obligations affected by a force majeure event shall not, by itself, extend the

17  time to perform any other obligation.  Where the Agencies agree to an extension of time, the

18  appropriate modification shall be made pursuant to Section XV (MODIFICATION) of this

19  Consent Decree.

20      42.    If the Agencies do not all agree that a force majeure event has occurred, or do not

21  all agree to the extension of time sought by Defendant, it shall be deemed that a force majeure

22  event has not occurred and/or that the extension of time sought by Defendant will not be granted,

23  unless Defendant invokes Dispute Resolution under Section VIII (DISPUTE RESOLUTION) of

24  this Consent Decree.  In any such dispute, Defendant bears the burden of proving, by a

25  preponderance of the evidence, that each claimed force majeure event is a force majeure event,

26  that Defendant gave the notice required by Paragraph 40, that the force majeure event caused any

27  delay Defendant claims was attributable to that event, and that Defendant exercised best efforts

28  to prevent or minimize any delay caused by the event.

                                                                            Consent Decree

1        VIII. DISPUTE RESOLUTION

2   43. Unless otherwise expressly provided for in this Consent Decree, the dispute

3 resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising

4 under or with respect to this Consent Decree.  Defendant's failure to seek resolution of a dispute

5 under this Section shall preclude Defendant from raising any such issue as a defense to an action

6 by the Plaintiffs to enforce any obligation of Defendant arising under this Decree.

7   44. Informal Dispute Resolution.  Any dispute subject to Dispute Resolution under

8 this Consent Decree shall first be the subject of informal negotiations.  The dispute shall be

9 considered to have arisen when Defendant sends the Agencies a written Notice of Dispute.  Such

10 Notice of Dispute shall state clearly the matter in dispute.  The period of informal negotiations

11 shall not exceed fifteen (15) days from the date the dispute arises, unless that period is modified

12 by written agreement of the Agencies and the Defendant.  If the Parties cannot resolve a dispute

13 by informal negotiations, then the position advanced by the Agencies shall be considered binding

14 unless, within twenty (20) days after receiving written notice from any Agency terminating

15 informal negotiations, Defendant invokes formal dispute resolution procedures as set forth

16 below.

17   45. Formal Dispute Resolution.  Defendant shall invoke formal dispute resolution

18 procedures, within the time period provided in the preceding Paragraph, by serving on the

19 Agencies a written Statement of Position regarding the matter in dispute.  The Statement of

20 Position shall include, but may not necessarily be limited to, any factual data, analysis, or expert

21 opinion supporting Defendant's position and any supporting documentation relied upon by

22 Defendant.

23   46. The Agencies shall serve their Statement of Position within twenty (20) days of

24 receipt of Defendant's Statement of Position.  The Agencies' Statement of Position shall include,

25 but may not necessarily be limited to, any factual data, analysis, or opinion supporting that

26 position and any supporting documentation relied upon by the Agencies.  The Agencies'

27 Statement of Position shall be binding on Defendant, unless Defendant files a motion for judicial

28 review of the dispute in accordance with the following Paragraph.

47.    Defendant may seek judicial review of the dispute by filing with the Court and serving on the Plaintiffs, in accordance with Section XII (NOTICES) of this Consent Decree, a motion requesting judicial resolution of the dispute. The motion must be filed within ten (10) days of receipt of the Agencies' Statement of Position pursuant to the preceding Paragraph. The motion shall contain a written statement of Defendant's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

48.    The Plaintiffs shall respond to Defendant's motion within the time period allowed by the Local Rules of this Court. Defendant may file a reply memorandum, to the extent permitted by the Local Rules.

49.    In any dispute brought under Paragraph 47, Defendant shall bear the burden of demonstrating that its position clearly complies with this Consent Decree and that Defendant is entitled to relief under applicable law. The Plaintiffs reserve the right to argue that their position is reviewable only on the administrative record and must be upheld unless arbitrary and capricious or otherwise not in accordance with law.

50.    The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendant under this Consent Decree, unless and until final resolution of the dispute so provides. Stipulated penalties with respect to the disputed matter shall continue to accrue from the first day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 36, above. If Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VI (STIPULATED PENALTIES).

## IX. INFORMATION COLLECTION AND RETENTION

51.    The Plaintiffs and their representatives, including attorneys, contractors, and consultants, shall have the right of entry into the Facility at all reasonable times, upon presentation of credentials, to:

a.    monitor the progress of activities required under this Consent Decree;

Consent Decree

b.      verify any data or information submitted to the Plaintiffs in accordance with the terms of this Consent Decree;

c.      obtain samples and, upon request, splits of any samples taken by Defendant or its representatives, contractors, or consultants;

d.      obtain documentary evidence, including photographs and similar data; and

e.      assess Defendant's compliance with this Consent Decree.

52.     Upon request, Defendant shall provide the Agencies or their authorized representatives splits of any samples taken by Defendant.  Upon request, the Agencies shall provide Defendant splits of any samples taken by the Agencies.

53.     Until five (5) years after the termination of the Consent Decree, Defendant shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relates in any manner to Defendant's performance of its obligations under this Consent Decree.  This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures.  At any time during this information-retention period, the Plaintiffs may request copies of any documents, records, or other information required to be maintained under this Paragraph.

54.     At the conclusion of the information-retention period provided in the preceding Paragraph, Defendant shall notify Plaintiffs at least ninety (90) days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by Plaintiffs, Defendant shall deliver any such documents, records, or other information to Plaintiffs.  Defendant may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law.  If Defendant asserts such a privilege, it shall provide the following for each document, record or information:  (1) the title; (2) the date; (3) the name and title of each author; (4) the name and title of each addressee and recipient; (5) a description of the subject; and (6) the

Consent Decree

1  privilege asserted by Defendant.  However, no documents, records, or other information created

2  or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of

3  privilege.

4      55.    Defendant may also assert that information required to be provided under this

5  Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2.  As to

6  any information that Defendant seeks to protect as CBI, Defendant shall follow the procedures

7  set forth in 40 C.F.R. Part 2.

8      56.    This Consent Decree in no way limits or affects any right of entry and inspection,

9  or any right to obtain information, held by the Plaintiffs pursuant to applicable federal, state or

10  local  laws, regulations, or permits, nor, except as provided in Paragraph 20, does it limit or

11  affect any duty or obligation of Defendant to maintain documents, records, or other information

12  imposed by applicable federal, state or local laws, regulations, or permits.

13      X.  EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

14      57.    This Consent Decree resolves (a) the civil claims of the Plaintiffs for the

15  violations alleged in the Complaint filed in this action through the date of lodging of this

16  Consent Decree; (b) the civil claims alleged in EPA Finding of Violation (Docket No. R9-05-20),

17  EPA Finding and Notice of Violation (Docket No. R9-06-05) and EPA Finding of Violation

18  (Docket No. R9-06-01); (c) the civil claims alleged in North Coast Notices of Noncompliance

19  NON Nos. 10068, 10209, 10214, 10156, 10462, 10467, 10470, 10471, 10472, 10474, and 11302,

20  and (d) the civil claims alleged in North Coast's Stipulated Order of Abatement (No. 01-05-06).

21      58.    The Plaintiffs reserve all legal and equitable remedies available to enforce the

22  provisions of this Consent Decree.  This Consent Decree shall not be construed to limit the

23  rights of the Plaintiffs to obtain penalties or injunctive relief under the CAA or implementing

24  regulations, or under other federal, state or local laws, regulations, or permit conditions, except as

25  expressly specified in Paragraph 57.

26      59.    The terms, requirements and conditions of this Consent Decree are in addition to,

27  and not in lieu of, any other applicable term, requirement or condition in any permit or federal,

28  state or local law, rule or regulation ("Applicable Requirement(s)").  Compliance with this

-18-

Consent Decree

1   Consent Decree does not constitute or excuse compliance with any other Applicable

2   Requirement.  Evergreen is responsible apart from this Consent Decree for achieving and

3   maintaining complete compliance with all Applicable Requirements, and Evergreen's

4   compliance with this Consent Decree shall not constitute a defense to any action to enforce any

5   Applicable Requirement.  This Consent Decree is not a permit or a modification of any permit.

6   Plaintiffs do not by their consent to entry of this Consent Decree warrant or aver in any manner

7   that compliance with any aspect of this Consent Decree will result in compliance with the CAA

8   or state law.  This Consent Decree shall not be construed to prevent or limit the rights of the

9   United States, the State of California or North Coast to obtain penalties or injunctive relief under

10  the CAA or state law except as specified in Paragraph 57.

11      60.    Except as otherwise provided by law or determined by a Court of competent

12  jurisdiction, this Consent Decree does not limit or affect the rights of Defendant or of the

13  Plaintiffs against any third parties not party to this Consent Decree, nor does it limit the rights of

14  third parties not party to this Consent Decree against Defendant, except as otherwise provided by

15  law.

16      61.    This Consent Decree shall not be construed to create rights in, or grant any cause

17  of action to, any third party not party to this Consent Decree.

18                              XI.  COSTS

19      62.    The Parties shall bear their own costs of this action, including attorneys' fees,

20  except that the Plaintiffs shall be entitled to collect the costs (including attorneys' fees) incurred

21  in any action necessary to enforce this Consent Decree.

22                              XII.  NOTICES

23      63.    Unless otherwise specified herein, whenever notifications, submissions, or

24  communications are required by this Consent Decree after the Effective Date, they shall be made

25  in writing and addressed as follows:

26  To the United States or DOJ:

27  Chief, Environmental Enforcement Section
    Environment and Natural Resources Division
28  U.S. Department of Justice

Consent Decree

1  Box 7611, Ben Franklin Station
   Washington, DC 20044-7611
2  Re: DOJ No. 90-5-2-1-08786

3  To EPA:
   Kara Christenson, ORC-2
4  U.S. Environmental Protection Agency, Region IX
   75 Hawthorne Street
5  San Francisco, CA 94105
   e-mail: Christenson.Kara@epa.gov
6  (will accept notification by email)

7

8  Director, Air Division (AIR-1)
   U.S. Environmental Protection Agency, Region IX
   75 Hawthorne Street
9  San Francisco, CA 94105
   Attn: Cyntia Steiner (AIR-5)
10 e-mail: Steiner.Cyntia@epa.gov
   (will accept notification by email)

11

12 To ARB:

13 James Ryden
   Chief Compliance Division
14 California Air Resources Board
   1001 I Street, P.O. Box 2815
15 Sacramento, CA 95812
   e-mail: jryden@arb.ca.gov

16
   with a copy to:
17
   George T. Poppic, Jr.
18 Senior Counsel
   Air Resources Board
19 P.O. Box 2815
   Sacramento, CA 95812
20 e-mail: gpoppic@arb.ca.gov

21 To North Coast

22 Richard Martin, Jr.
   Air Pollution Control Officer
23 North Coast Unified Air Pollution Control District
   2300 Myrtle Avenue
24 Eureka, CA 95501
   e-mail: rmartin@ncuaqmd.org
25
   Nancy Diamond
26 Attorney at Law
   822 G Street, Suite 3
27 Arcata, CA 95521
   e-mail: ndiamond@humboldt1.com
28

Consent Decree

1    To Evergreen

2    David Tsang
     Chief Executive Officer
3    Evergreen Pulp, Inc.
     1 TCF Drive
4    Samoa, CA  95564
     e-mail: DavidTsang@EvergreenPulp.com
5    (will accept notification by email)

6    Carol Romero
     Manager, Environment and Safety
7    Evergreen Pulp, Inc.
     1 TCF Drive
8    Samoa, CA  95564
     e-mail: CarolRomero@EvergreenPulp.com
9    (will accept notification by email)

10   David Cooke
     Allen Matkins Leck Gamble Mallory & Natsis LLP
11   Three Embarcadero Center, 12th Floor
     San Francisco, CA  94111
12   e-mail: dcooke@allenmatkins.com
     (will accept notification by email)

13

14        64.    Any Party may, by written notice to the other Parties, change its designated notice

15   recipient or notice address provided above.

16        65.    Notices submitted pursuant to this Section shall be deemed submitted upon

17   mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties.

18                          XIII.  EFFECTIVE DATE

19        66.    The Effective Date of this Consent Decree shall be the date upon which this

20   Consent Decree is entered by the Court.

21                    XIV.  RETENTION OF JURISDICTION

22        67.    The Court shall retain jurisdiction over this case until termination of this Consent

23   Decree, for purpose of resolving disputes arising under this Decree or entering orders modifying

24   this Decree, pursuant to Section VIII (DISPUTE RESOLUTION) and Section XV

25   (MODIFICATION), or effectuating or enforcing compliance with the terms of this Decree.

26                          XV.  MODIFICATION

27        68.    The terms of this Consent Decree may be modified only by a subsequent written

28   agreement signed by all the Parties.  Where the modification constitutes a material change to any

1    term of this Decree, it shall be effective only upon approval by the Court.

2                        XVI.  TERMINATION

3         69.    After Defendant has maintained continuous satisfactory compliance with this

4    Consent Decree for a period of two (2) years after the Effective Date of this Consent Decree, and

5    has paid the civil penalty and any accrued stipulated penalties as required by this Consent Decree,

6    Defendants may serve upon Plaintiffs a Request for Termination, stating that Defendant has

7    satisfied those requirements, together with all necessary supporting documentation.

8         70.    Following receipt by the Plaintiffs of Defendant's Request for Termination, the

9    Parties shall confer informally concerning the Request and any disagreement that the Parties may

10   have as to whether Defendant has satisfactorily complied with the requirements for termination

11   of this Consent Decree.  If the Plaintiffs agree that the Decree may be terminated, the Parties

12   shall submit, for the Court's approval, a joint stipulation terminating the Decree.

13        71.    If the Plaintiffs do not agree that the Decree may be terminated, Defendant may

14   invoke Dispute Resolution under Section VIII (DISPUTE RESOLUTION) of this Decree.

15   However, Defendant shall not seek Dispute Resolution of any dispute regarding termination,

16   under Paragraph 47 of Section VIII (DISPUTE RESOLUTION), until thirty (30) days after

17   service of its Request for Termination.

18                     XVII.  PUBLIC PARTICIPATION

19        72.    This Consent Decree shall be lodged with the Court for a period of not less than

20   thirty (30) days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The

21   Plaintiffs reserve the right to withdraw or withhold their consent if the comments regarding the

22   Consent Decree disclose facts or considerations indicating that the Consent Decree is

23   inappropriate, improper or inadequate.  Defendant consents to entry of this Consent Decree

24   without further notice.

25                     XVIII.  SIGNATORIES/SERVICE

26        73.    Each undersigned representative of the Parties certifies that he or she is fully

27   authorized to enter into the terms and conditions of this Consent Decree and to execute and

28   legally bind the Party he or she represents to this document.

                              -22-                         Consent Decree

74.   This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.

75.   Defendant agrees not to oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the Plaintiffs have notified Defendant in writing that they no longer support entry of the Decree.

76.   Defendant agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XIX.   FINAL JUDGMENT

77.   Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to Plaintiffs and Defendant.

**IT IS SO ORDERED:**

Dated: _____        _____

United States District Judge

Consent Decree

1   FOR PLAINTIFF UNITED STATES OF AMERICA:

2

3                                    RONALD J. TENPAS
                                     Acting Assistant Attorney General
4                                    Environment and Natural Resources Division

5

6
    Dated: _September 25, 200_ By: _____
7                                    ELLEN MAHAN
                                     Deputy Chief
8                                    Environmental Enforcement Section
                                     Environment and Natural Resources Division
9                                    U.S. Department of Justice

10

11  Dated: _September 28, 2007_      _____
                                     ANN C. HURLEY
12                                   Trial Attorney
                                     Environmental Enforcement Section
13                                   U.S. Department of Justice
                                     301 Howard Street, Suite 1050
14                                   San Francisco, CA 94015

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                   - 24 -                    Consent Decree

FOR THE UNITED STATES ENVIRONMENTAL PROTECTION AGENCY:


Dated: _9/21/07_

_____
WAYNE NASTRI
Regional Administrator
U.S. Environmental Protection Agency, Region 9
San Francisco, CA




Dated: _9/24/07_

_____
NANCY MARVEL
Regional Counsel
U.S. Environmental Protection Agency, Region 9
San Francisco, CA


OF COUNSEL:

Kara Christenson
Senior Counsel
U.S. Environmental Protection Agency, Region 9
75 Hawthorne Street
San Francisco, CA 94105

- 25 -                                    Consent Decree

1  FOR PLAINTIFF CALIFORNIA AIR RESOURCES BOARD:

2

3

4

5
   Dated: 7 Sept '07                    _____
6                                        ANITA E. RUUD
7                                        Deputy Attorney General
                                         California Office of the Attorney General
8

9

10

11
   Dated: _____              _____
12
                                         Executive Director
13                                       California Air Resources Board

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FOR PLAINTIFF CALIFORNIA AIR RESOURCES BOARD:

DATED this 21 day of September, 2007

Tom Cackette
Acting Executive Officer

- 1

1    FOR PLAINTIFF NORTH COAST UNIFIED AIR QUALITY MANAGEMENT DISTRICT:

2

3

4    Dated:  _9/24/07_

5    RICHARD L. MARTIN, JR.
     Air Pollution Control Officer
6    North Coast Unified Air Quality Management
       District

7

8

9

10

11

12   Approved as to form:

13

14

15   Nancy Diamond, District Counsel
     North Coast Unified Air Quality
16     Management District

17

18

19

20

21

22

23

24

25

26

27

28

                              - 27 -                        Consent Decree

1    FOR DEFENDANT EVERGREEN PULP, INC.:

2

3

4    Dated:  Sept 11/07

5                                          Name:        David Tsang
                                           Title:        Chief Executive Officer

6

7

8    Agent for Service of Process:

9    David D. Cooke
     Allen Matkins Leck Gamble Mallory & Natsis LLP
10   Three Embarcadero Center, 12th Floor
     San Francisco, CA  94111-4074

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                   - 28 -

                                                        Consent Decree

# APPENDIX A

**NORTH COAST UNIFIED AIR QUALITY MANAGEMENT DISTRICT**
2300 Myrtle Avenue, Eureka, CA 95501
Phone: (707) 443–3093 · Fax: (707) 443–3099



# AUTHORITY TO CONSTRUCT
# &
# TEMPORARY PERMIT TO OPERATE
# PERMIT NO. 000-233-1

### IS HEREBY GRANTED TO:

Evergreen Pulp, Inc.
One TCF Drive
Samoa, CA 95564

### Responsible Official: David Tsang, Chief Executive Officer

## FOR THE SOURCE LISTED BELOW:

Evergreen Pulp, Inc. (Evergreen) has proposed to modify the air pollution control equipment associated with the Smelt Dissolving Tank (Tank) at the Samoa facility. The Tank is designed to receive smelt from the recovery furnace and combine it with fresh water to regenerate green liquor. The Tank, manufactured by A. Ahlstrom, has a 50,000 gallon capacity and is connected to a Wet Scrubber (WS) type air pollution control device whose purpose is to reduce particulate matter and Total Reduced Sulfur (TRS) emissions. This equipment is currently operating under AQMD Permit to Operate NP-074. This ATC was originally issued on July 14th 2005 and was modified on July 26th 2005.

## SUBJECT TO THE FOLLOWING CONDITIONS:

Construction and installation of the equipment must be conducted in compliance with all data and specifications submitted with the application under which this permit is issued unless otherwise specified herein. This is an Authority to Construct Permit and a Temporary Permit to Operate subject to the following conditions.

EP3973

# GENERAL CONDITIONS

1.    This Authority to Construct / Temporary Permit to Operate shall be valid from the date of issuance for a period of 170 days not to exceed December 31st 2005.

2.    This Authority to Construct permit supercedes all permits previously issued for the smelt dissolver tank and its associated wet scrubber device.

3.    Unless specifically stated, for purposes of this permit, the nozzles, lances, instruments, strainers, and ancillary equipment listed in the Authority to Construct application shall be considered to be components of the smelt dissolving tank wet scrubber.

4.    This Authority to Construct shall be posted in a conspicuous location at the site and shall be made available to North Coast Unified Air Quality Management District (AQMD) representatives upon request.

5.    This Authority to Construct is issued pursuant to California Health and Safety Code Section 42301.1.

6.    Knowing and willful misrepresentation of a material fact in the application for the permit, or failure to comply with any condition of the permit or of the AQMD Rules and Regulations, shall be grounds for revocation of this permit.

7.    Any violation of any condition of this permit is a violation of AQMD Rules and Regulations, and California State Law.

8.    The APCO reserves the right to amend this permit in order to ensure compliance of this operation or to mitigate or abate any public nuisance. Such amendments may include requirements for additional operating conditions, testing, data collection, reporting and other conditions deemed necessary by the APCO to ensure compliance with AQMD rules and Regulations.

9.    The Rules, paragraphs, sentences, clauses, and phrases of the permit are severable. If any Rules, paragraphs, sentences, clauses, or phrase referenced should be declared unconstitutional by a valid judgment or decree of a court with competent jurisdiction, such unconstitutionality shall not affect any of the remaining Rules, paragraphs, sentences, clauses, and phrases.

10.   This permit is not transferable from either one location to another, from one piece of equipment to another, or from one person to another.

11.   This permit is effective only upon payment of fees in accordance with AQMD Rules and Regulations. In the event of facility closure or change of ownership or responsibility, the new owner or operator shall remit fees for the emissions generated or fees for activities unpaid for prior to the aforementioned change in status.

EP3974

12.     The permit and conditions remain in effect in the event of any change in control or ownership of the facility. In the event of any such change in control or ownership of the subject facility, the permittee shall notify the succeeding owner of the permit and conditions and shall notify the AQMD of the change in control or ownership within fifteen (15) days of that change.

13.     The "Right of Entry", as delineated in California Health and Safety Code Section 41510 of Division 26, shall apply at all times. Failure to do so may be grounds for permit suspension or revocation.

14.     All equipment, if any, regulated by this permit shall at all times be maintained in good working order and be operated as efficiently as possible to ensure compliance with all applicable emission limits.

15.     This permit does not convey any property rights of any sort, or any exclusive privilege.

16.     The permittee shall submit an application for any changes to the basic or control equipment for any permit unit in this permit. No change shall begin prior to the issuance of a permit.

17.     The permittee shall not discharge such quantities of air contaminants or other material which cause injury, detriment, nuisance or annoyance to any considerable number of persons or to the public or which endanger the comfort, repose, health or safety of any such persons or the public or which cause or have a natural tendency to cause injury or damage to business or property.

18.     The permittee shall not discharge into the atmosphere from any source whatsoever any air contaminant for a period or periods aggregating more than three (3) minutes in any one hour which is as dark or darker in shade as that designated as No. 2 on the Ringlemann Chart, as published by the United States Bureau of Mines; or of such opacity as to obscure an observer's view to a degree equal to or greater than Ringlemann 2 or forty (40) percent opacity.

19.     The permittee shall not handle, transport, or store material in such a manner as to allow unnecessary amounts of particulate matter to become airborne and leave the property. Reasonable precautions shall be taken to prevent particulate matter from becoming airborne.

20.     The permittee shall not construct, erect, modify, operate, or use any equipment which conceals an air contaminant emission, which would otherwise constitute a violation of the limitations of this permit, unless the operation or use of said equipment results in a significant reduction in the total emission of air contaminants.

21.     The permittee shall furnish to the APCO, within a reasonable time, any information that the APCO may request in writing to determine compliance with this permit or whether cause exists for modifying, revoking and reissuing, or terminating this permit. Upon request, the permittee shall also furnish to the APCO copies of records required to be kept by this permit.

22.     This permit does not authorize the emission of air contaminants in excess of those allowed by the California Health and Safety Code or the Rules and Regulations of the AQMD. This permit cannot be considered as permission to violate existing laws, ordinances, regulation or

statutes of other governmental agencies. The violation of any of these terms and conditions shall be grounds for revocation of this permit, and shall be a violation of AQMD Rules and Regulations.

23. Permit requirements apply to the facility owner and/or operator(s) *and any contractor or subcontractor* performing any activity authorized under this permit. Any person(s), including contractor(s) and/or subcontractor(s), not in compliance with the applicable permit requirements are in violation of State and local laws and subject to appropriate civil and criminal penalties. The facility owner and/or operator, and all contractor(s) or subcontractor(s) are *liable* for the actions and violations of their employee(s). Any violation committed by a contractor or subcontractor shall be considered a violation by the facility owner and/or operator, and is also a violation by the contractor and/or any subcontractor(s).

24. Upset or breakdown conditions and violations of emission limits set forth in District Rules or conditions of this permit shall be corrected as expeditiously as possible. Such conditions shall be reported as required by AQMD Rule 105.

25. Changes in plans, specifications, and other representations proposed in the application documents shall not be made if they will increase the discharge of emissions or cause a change in the method of control of emissions or in the character of emissions. Any such proposed changes shall be submitted as modification to this permit. No modification shall begin prior to issuance of a permit for such modification.

26. The owner or operator to whom this permit is issued is required to (a) ensure in writing that every and all operating staff, contractors, subcontractors, and employees, are advised and familiar with all conditions contained in this permit prior to allowing any staff, contractors, or employees to operate any equipment or conduct any activities under this permit; and (b) provide annual training for appropriate personnel regarding the terms of this permit. New personnel shall be trained regarding the terms of this permit prior to assignment to a function affected by this permit.

27. The facility shall maintain the permitted equipment in compliance with Federal and State Occupational Safety and Health Administration requirements so as to ensure the health and safety of District representatives performing a site inspection.

## OPERATIONAL CONDITIONS

28. The permittee shall operate the smelt dissolving tank only when the Munters structured packing within the wet scrubber is continuously irrigated with a minimum total flow of 445 gallons per minute of weak wash liquid. For purposes of compliance with this condition, total flow to the packing shall be calculated from one hour averages of measurements in gallons per minute, taken at a minimum rate of once every 15 seconds, by total flow meters maintained, calibrated and installed in the liquid supply line to the wet scrubber system and at the inlet to the header to the lance spray curtain. The flow meters shall include displays easily visible for inspection. The scrubber sprays and/or nozzles shall be maintained in optimum working condition. The permittee shall maintain records of the hourly average total flow rate of the weak wash liquid to the wet scrubber at the pulp mill. The foregoing minimum flow requirement shall not apply during periods of (i) Startup and Shutdown, as defined herein, and (ii) acid washes of the Munters structured packing. For purposes of this paragraph and

EP3976

paragraphs 29(a), 29(b), and 33 of this Permit, the term "Start up" means the period commencing with the firing of black liquor in the recovery boiler and ending when black liquor flow to the boiler exceeds 180 gpm, or 24 hours after commencement, whichever occurs first, and the term "Shutdown" means the period commencing when black liquor flow to the boiler drops below 180 gpm and ends six hours after black liquor flow to the boiler is terminated. The permittee shall maintain records of Startups and Shutdowns as defined herein.

29.    (a)    The permittee shall operate the smelt dissolving tank only when the lances installed pursuant to this Authority to Construct and Temporary Permit to Operate are continuously supplied with weak wash liquid at a minimum flow rate of 135 gallons per minute. For purposes of compliance with this condition, flow shall be calculated as a one hour average of measurements in gallons per minute, taken at a minimum rate of once every 15 seconds, by a total flow meter maintained, calibrated and installed at the inlet to the header of the lance spray curtain, to accurately indicate the gallons per minute of weak wash liquid to the lance spray curtain. The total flow meter shall include a display easily visible to the operating personnel. The permittee shall maintain records of the hourly average of total flow of the weak wash liquid to the spray lances at the pulp mill. The foregoing minimum flow requirement shall not apply during periods of (i) Startup and Shutdown, (ii) periodic lance replacement as required by this permit or any federal compliance order, and (iii) acid washes of the Munters structured packing.

(b)    The permittee shall operate the smelt dissolving tank only when each spray nozzle on each lance installed pursuant to this Authority to Construct and Temporary Permit to Operate is continuously supplied with weak wash liquid at a minimum pressure of 80 pounds per square inch. Pressure shall be calculated as a one hour average of measurements in pounds per square inch, taken at a minimum rate of once every 15 seconds, by a pressure gauge maintained and installed on each lance. Each pressure gauge shall include a display easily visible to the operating personnel. The permittee shall maintain records of the hourly average pressure of the weak wash liquid to the spray lances at the pulp mill. The foregoing minimum pressure requirement shall not apply during periods of (i) Startup and Shutdown, (ii) periodic lance replacement as required by this permit or any federal compliance order, and (iii) acid washes of the Munters structured packing.

(c)    Prior to issuance of a permit to operate, permittee shall have submitted to the APCO a plan for the monthly inspection and maintenance of the spray nozzles of the lance spray curtain to assure continuous proper operation of the lance spray curtain. The plan shall describe at a minimum: (i) the procedure(s) for spray lance removal and include the requirement that only one spray lance may be out of service at any time, (ii) the procedures(s) for inspection of the spray nozzles in each lance, before and after cleaning, to assure that the critical orifice in each spray nozzle has not been enlarged or damaged, and (iii) how the spray nozzles in each lance will be cleaned. The plan shall also include a discussion of mitigation measures to be employed during the spray lance inspection and cleaning process. Such discussion shall include an analysis of increasing pressure and flow to the spray lances not removed for inspection and cleaning.

Permittee shall advise the APCO at least 24 hrs. in advance of commencement of the initial monthly inspection and maintenance lance replacement so that the APCO may observe the process and procedures to be used by Evergreen. Thereafter, permittee shall notify the APCO within 24 hrs. of performance of a monthly lance replacement and shall permit the APCO to

Evergreen Pulp, Inc.  
Permit No. 000-233-1

Page 6 of 12

Issued 7/14/05  
Revised 7-26-05  
Revised 1-20-06

inspect the removed lances prior to any cleaning or rehabilitation of the removed lances. The APCO shall inspect such lances within 72 hrs.

If, after four months, Evergreen and the APCO agree that no lance shows any build-up or wear and tear that could impair the efficiency of the spray curtain, Evergreen may submit a request for an administrative change to this permit to allow for bi-monthly lance replacement. All other requirements of this provision shall remain in full force and effect.

30.     The permittee shall operate the smelt dissolving tank only when the weak wash liquid within the smelt dissolving system wet scrubber is maintained at a pH of not less than 11.5 nor more than 14. For purposes of compliance with this condition, the pH shall be calculated as a one hour average of pH measurements taken at a minimum rate of once every 15 seconds, by a continuous pH meter maintained, calibrated and installed at the inlet to the packing within the wet scrubber. The continuous pH meter shall include a display easily visible for inspection. The permittee shall maintain records of the pH measurements of weak wash at the pulp mill. The foregoing allowable pH range shall not apply during periods of acid washes of the Munters structured packing.

31.     The permittee shall only operate the smelt dissolving tank while the Wet Scrubber demisters are cleaned with fresh water for a period of five minutes at a flow rate and pressure as identified by the manufacturer of the Munters Structured Packing after every 8 hours of operation.

32.     The permittee shall only operate the smelt dissolving tank while the Wet Scrubber bypass damper is completely closed; except during periods of testing, upset, breakdown or emergency events. Each instance the damper is opened, adjusted, or closed shall be recorded in the facility's breakdown log and reported to the AQMD in accordance with AQMD Rule 105. The permittee shall notify the APCO 72 hours in advance of any planned occasion where the installation of new components may require bypass of the wet scrubber. In such circumstance, the total bypass time is limited to no more than 24 hours in any one 30 day period.

33.     The permittee shall operate the smelt dissolving tank only when the static differential pressure drop across the wet scrubber is not more than 1.0 inches of water column. For purposes of compliance with this condition, the static differential pressure drop shall be calculated as a one hour average of pressure drop measurements recorded in inches of water column taken at a minimum rate of once every 15 seconds by a mechanical gauge maintained, calibrated and installed at the wet scrubber with a pressure sensor located above the demister pad and a pressure sensor located prior to the Munters structured packing. The permittee shall maintain records of the static differential pressure drop across the smelt dissolver wet scrubber at the pulp mill. The foregoing maximum pressure drop requirement shall not apply during periods of (a) Startup and Shutdown, and (b) acid washes of the Munters structured packing.

34.     The permittee shall:

a.      (i) Maintain the viewport in the wet scrubber installed in 2005 and check the condition of the Munters structured packing through the viewport once per day, and (ii) Conduct detailed inspection of the condition of the Munters structured packing at each annual scheduled mill shutdown.

b.      Maintain, and purge once per 12 hour shift, the inline strainers on each spray

Evergreen Pulp, Inc.                    Page 7 of 12                    Issued 7/14/05
Permit No. 000-233-1                                                    Revised 7-26-05
                                                                       Revised 1-20-06

lance installed in 2005 pursuant to this Authority to Construct and Temporary Permit to Operate.

    c.    Maintain and operate the pressure gauges at each lance and the flow indicator at the header to the lances.

35.    This paragraph is reserved.

36.    Prior to September 15th 2005, the permittee shall prepare and submit an APCO approved detailed preventative maintenance schedule identifying the service life and indicators of performance of all Wet Scrubber components including but not limited to:

    i.    Itemization of the indicators of scrubber performance (i.e. minimum PM removal efficiency)

    ii.    Itemization of scrubber performance action thresholds where corrective action will be instituted (i.e. pressure drop across scrubber, pressure drop across demisters, temperature, pH, flow rate).

    iii.    Identification of specific shift, daily, monthly, and quarterly preventative maintenance actions, including, but not limited to: frequency of inspection, calibration, cleaning/servicing, and replacement of the following:

    1. Tank
    2. Ducts
    3. Packing (if applicable)
    4. Demisters (if applicable)
    5. Instrumentation
    6. Fans
    7. Pumps
    8. Motor Controls
    9. Dampers

# EMISSION CONDITIONS

37.    This paragraph is reserved.

38.    This paragraph is reserved.

39.    The permittee shall not discharge from the Wet Scrubber exhaust stack, particulate matter into the atmosphere in excess of 0.20 pounds per ton of black liquor solids (as calculated according to procedure in condition #43 through #45).

40.    The permittee shall not discharge from the Wet Scrubber exhaust stack, total reduced sulfur (calculated as H2S) into the atmosphere in excess of 0.0168 pounds per ton of per ton of black liquor solids (as calculated according to procedure in condition #43 through #45).

41.    The permittee shall not discharge emissions into the atmosphere in excess of the limits imposed by condition 18.

EP3979

Evergreen Pulp, Inc.                Page 8 of 12                Issued 7/14/05
Permit No. 000-233-1                                           Revised 7-26-05
                                                               Revised 1-20-06

42.    No fugitive emissions, including but not limited to odorous compounds, shall be emitted
       into the atmosphere in any quantity that the APCO determines creates a public nuisance.

# MONITORING

43.

   a.    The permittee shall cause the source testing of the smelt dissolver system not less
         than once every calendar quarter. The source test shall be performed by personnel
         certified by the ARB. The source test shall include testing for particulate matter in
         accordance with CARB Method 5, except (i) cleanup solvent shall be water (not
         acetone), and (ii) all runs performed during the foregoing source tests shall be
         referenced in the test report, but only the first three valid runs shall be counted in the
         run-averaging determination of compliance.. The permittee shall notify the APCO at
         least 15 days prior to any compliance source test, and a source test plan must be
         submitted for approval at least 15 days prior to testing. The APCO shall be entitled to
         observe any such source test and shall receive copies of all data and reports with respect
         to that source test.

   b.    Permittee shall perform source test runs of the smelt dissolver at the system's
         normal operating rate. Permittee shall determine the system's normal operating rate
         based on an average of the previous nine months black liquor solids (on a dry basis)
         production.

   c.    Permittee shall also perform source test runs of the smelt dissolver at the system's
         maximum operating rate. Permittee shall determine the system's maximum operating
         rate.

   d.    The initial source test conducted pursuant to this requirement shall be based upon
         the operational parameters identified in this Authority to Construct and Temporary
         Permit to Operate. In the event that the initial source test does not demonstrate
         compliance with all applicable emissions limitations using the operational parameters
         set out in this Authority to Construct and Temporary Permit to Operate, permittee shall
         file an application for modification of this Authority to Construct and Temporary Permit
         to Operate within 45 days of the initial source test to incorporate operational parameters
         that would demonstrate such compliance.

   e.    Should the results of two consecutive source tests conducted pursuant to this
         paragraph indicate that emissions from the smelt dissolver are in compliance with
         applicable emissions limitations, then (i) the one hour averages set forth in those
         paragraphs shall be changed to three hour averages, and (ii) measurements or
         calculations required to be made once every 15 seconds shall be required every 15
         minutes.

   f.    Permittee shall continue to conduct source testing in this manner until permittee
         demonstrates compliance with all applicable standards for the smelt dissolver system

with two consecutive quarterly source tests. At such time as permittee demonstrates compliance with all applicable standards through two consecutive, valid quarterly source tests, permittee shall no longer be required to source test on a quarterly basis, but shall thereafter be required to source test on a semi-annual basis. Permittee shall continue to conduct source testing in this manner until permittee demonstrates compliance with all applicable standards for the smelt dissolver system with two consecutive semi-annual source tests. At such time as permittee demonstrates compliance with all applicable standards through two consecutive, valid semi-annual source tests, permittee shall no longer be required to source test on a semi-annual basis, but shall thereafter source test on an annual basis.

g.   Permittee may operate the system at a rate not higher than 110% of the maximum operating rate utilized in any test demonstrating compliance within the previous twelve months.

44.   For purposes of compliance with this permit, Black Liquor Solids firing rate shall be calculated as follows: The actual pounds of black liquor solids which were fired or combusted by the recovery furnace during the time period the corresponding sample was collected.

45.   The permittee shall contract with a third party to perform all source testing as required by this permit. All source testing shall be performed by CARB certified personnel, laboratory, and firm. The following source testing methods shall be used to determine compliance with emission limitations specified herein:

a.   Particulate Matter – as set forth in paragraph 43, above.

b.   Visible Emissions – EPA Reference Method 9.

c.   Total Reduced Sulfur – EPA Reference Method 16B. Modification of this method to allow the use of alternate types of instrumentation is permissible subject to APCO approval.

46.   The permittee shall wash the Munters structured packing with an acid bath at least once every 120 days, however, no acid bath shall be performed within thirty days prior to any source test. Within fifteen working days of issuance of this Authority to Construct and temporary Permit to Operate, the permittee shall submit to the APCO a plan describing the acid wash process to be used. Such plan shall include the following information: a) duration of the acid wash process; b) mitigation measures to address possible PM and TRS exceedences during an acid wash process. The permittee shall make and maintain at the pulp mill a written log of each acid wash performed documenting compliance with the requirements of the acid wash plan. Permittee shall advise the APCO at least five working days in advance of permittee performing the first acid bath to allow the APCO to observe the processes and procedures to be used by permittee.

47.   The permittee shall determine the wet scrubber particulate matter and TRS removal efficiency. The removal efficiency shall be determined by either (a) a methodology using downstream source test data, and upstream gas and particulate estimates based upon AP 42 or (b) a method otherwise approved by the APCO.

EP3981

48.    The permittee shall periodically evaluate Wet Scrubber components identified in the preventative maintenance schedule at the interval designated therein. A log indicating the components operational status and disposition shall be maintained according to condition #49.

# RECORDKEEPING CONDITIONS

49.    Air monitoring records shall be maintained on site and made available to AQMD personnel immediately upon request. All data, reports, and summaries shall be maintained on site for a period of five years from the date the data was collected.

50.    A breakdown log shall be maintained that describes the breakdown, includes the date and time of the breakdown, the cause of the breakdown, corrective measures taken, and the date and time when the breakdown was corrected.

# REPORTING CONDITIONS

51.    The APCO shall be notified, in writing, upon the startup and completion of the permitted activity.

52.    The permittee shall report to the AQMD any deviations from the requirements of this permit, including those attributable to breakdown conditions, the probable cause of the deviations, and any corrective actions or preventive measures taken. Breakdowns shall be reported to the AQMD no later than one (1) hour after detection during normal office hours (9:00 a.m. to 4:00 p.m.), or one hour after the start of the next regular business day, whichever is sooner, and the permittee shall take immediate steps to minimize the impact of the failure.

53.    The permittee shall provide information requested by the AQMD for emission inventory purposes within thirty (30) days of receiving the request.

54.    Every emissions source test performed during the period of this variance shall be summarized in a written report format and submitted to the Office of the APCO directly from the independent source testing firm and submitted on the same day, the same time, and in the same manner as delivered to the Petitioner.

55.    The permittee shall submit the results from the final compliance emissions source test summarized in a written report format to the Office of the APCO directly from the independent source testing firm and submitted on the same day, the same time, and in the same manner as delivered to the Permittee.

56.    This paragraph is reserved.

57.    The permittee shall submit the following written weekly status reports to the office of the APCO within 15 days following the end of each month:

    a.  Progress schedule itemizing the installation of the proposed modifications and source testing schedules;

    b.  Log of itemization of acid wash actions used to "unplug" the Smelt Dissolver Wet Scrubber;

    c.  Production rate log;

    d.  pH Flow rate log;

    e.  Smelt Dissolving Tank temperature log;

    f.  Pre-treatment flow rates in gallons per minute and psi ;

    g.  Log of daily wash cycles of the demisters;

    h.  Log of shift observations through scrubber view ports and inline strainers identifying scale build up; and,

    i.  Log of itemization of all equipment and operations Upset, Breakdown, and malfunctions by date, time and Item. Log of pressure drops across packing and log of pressure drops across demisters.

58.    No later than July 28th 2005, the permittee shall perform and submit to the APCO an approved ambient air quality modeling analyses of particulate matter emissions. Analyses shall consider contributions of particulate matter from all facility emission sources and shall model ambient air conditions before and after the proposed modifications have been completed.

59.    This paragraph is reserved.

60.    No later than August 1st 2005, the permittee shall perform or shall cause the performance of a record search of the NCASI database for information on chemical speciation of PM10 emissions from smelt dissolver tank scrubbers, and re-entrainment of particulate matter from precipitated sodium or calcium scale build up on demisters and / or packing components of smelt dissolver wet scrubbers. Upon receipt of said documents, plans, analyses, the permittee shall immediately forward copies of said records to the APCO.

END

EP3983

Evergreen Pulp, Inc.                    Page 12 of 12                    Issued 7/14/05
Permit No. 000-233-1                                                     Revised 7-26-05
                                                                        Revised 1-20-06

---

**N O R T H   C O A S T   U N I F I E D**
**A I R   Q U A L I T Y**
**M A N A G E M E N T   D I S T R I C T**

2300 MYRTLE AVENUE          PHONE  (707) 443-3093
EUREKA, CALIFORNIA  95501   FAX   (707) 443-3099

---

DATE: 1/20/2006          BY: _Simona Altman_

Simona Altman
Permit Services Division Manager

for
LAWRENCE D. ODLE
AIR POLLUTION CONTROL OFFICER

Permit Seal

EP3984

APPENDIX B



**NORTH COAST UNIFIED AIR QUALITY MANAGEMENT DISTRICT**
2300 Myrtle Avenue, Eureka, CA 95501
Phone: (707) 443.3093        Fax: (707) 443.3099

# AUTHORITY TO CONSTRUCT **COPY**
## and
# TEMPORARY PERMIT TO OPERATE
# NO. 000348-1

## IS HEREBY GRANTED TO:

**Permittee:**  Evergreen Pulp, Inc. - Samoa Pulp Mill
**Location:**   One TCF Drive
              Samoa, CA  95564

**Responsible Official:**  David Tsang
                         Chief Executive Officer

**Contact:**  Carol Romero, Environmental and Safety Manager
            One TCF Drive
            Samoa, CA  95564
            Phone: (707) 269-7553 Fax: (707) 476-4689

**Issued Date:**  **11/08/2006**
**Issued by:**    **NCUAQMD Air Pollution Control Officer**

## FOR THE SOURCE LISTED BELOW:

Installation and operation of an Electrostatic Precipitator (ESP) to control particulate matter emissions from the Lime Kiln.  Permittee has the option to vent the exhaust from the ESP to the existing venturi scrubber and/or the existing quench system.

## SUBJECT TO THE FOLLOWING CONDITIONS:

This is your Authority to Construct permit and Temporary Permit to Operate (hereafter called Permit). This Permit is subject to the following terms and conditions:

AUTHORITY TO CONSTRUCT
and
TEMPORARY PERMIT TO OPERATE
Issued November 08, 2006

58. Permittee shall submit the following reports according to Table 4 below.

Table 4

| Frequency | Information to be reported |
|-----------|----------------------------|
| Upon Occurrence | A. Each occasion when the average of 10 consecutive COMS 6-minute averages results in a measurement greater than 20%. |
| Quarterly | B. Excess emission report if the average of 10 consecutive 6-minute COMS averages results in a measurement greater than 20% opacity pursuant to 40 CFR 63.867. <br> C. Excess emission report consistent with 40 CFR 63.10(c). |
| Semi-Annually | D. When no parameter exceedances have occurred, Permittee shall submit a semiannual report stating that no excess emissions occurred during the reporting period. <br> E. Permittee shall report all occurrences of excess emissions from the Lime Kiln to the APCO in accordance with the timing requirements of Regulation I, Rule 105.5. <br> F. Report of no excess emissions consistent with 40 CFR 63.10(e) (3) (vi). |

# OPTIMIZATION TESTS

59. Permittee shall submit, for APCO approval, a test protocol for the optimization tests, identifying the specific tests to be conducted and including the variations in operating parameters no later 30 days prior to the optimization test date.

60. No later than sixty (60) days after initial startup, Permittee shall complete the APCO-approved optimization tests.

61. Based on the results of the optimization tests, Permittee shall submit a written request to the APCO to modify this Permit to incorporate the newly established parametric operating values. The APCO may amend the recordkeeping and reporting requirements as part of any modification.

62. The optimization tests shall be conducted in a manner consistent with 40 CFR 63 Subpart MM.

AUTHORITY TO CONSTRUCT
and
TEMPORARY PERMIT TO OPERATE
Issued November 08, 2006

# TESTING AND COMPLIANCE MONITORING CONDITIONS

63. Permittee shall cause an independent party which is CARB certified to conduct source tests of the Lime Kiln exhaust pursuant to the methods identified below. The test report shall be submitted to the APCO no later than ninety (90) days following completion of startup of the ESP.

64. Not less than thirty days prior to the date of any source test required by this Permit, Permittee shall provide the APCO and CARB written notice of the planned date of the test and a copy of the source test protocol. The source test results shall be summarized in a written report and submitted to the APCO and CARB directly from the independent source testing firm on the same day, the same time, and in the same manner as submitted to Permittee.

65. Permittee shall record and include in the final report the following parameters during compliance testing:
    a. Primary and secondary amperage of the Transformer Rectifier (TR) set
    b. Primary and secondary voltage of Transformer Rectifier (TR) set
    c. Spark rate in each ESP field

66. The following methods shall be used to determine compliance with the emissions limitations set forth in this Permit:
    a. **Particulate Matter - CARB Method 5**
        i. Permittee shall demonstrate compliance with the NCUAQMD Regulatory limit of 0.20 gr/dscf (corrected to 10% Oxygen) using CARB Method 5.
        ii. Pursuant to 40 CFR 63.865(b)(1), cleanup solvent shall be de-ionized water.
        iii. All runs performed during the source tests shall be referenced in the test report, but only the first three valid runs shall be counted in the run-averaging determination of compliance.
        iv. Permittee shall source test for particulate matter from the Lime Kiln once per calendar year.
        v. Testing is to be done using normal operating conditions, where normal means: pulp production, TCF > 550 ADSTP/day, UBK >600 ADSTP/day and mud flow to precoats > 210 gpm.
    b. **Particulate Matter - EPA Method 5**
        i. Permittee shall demonstrate compliance with the Federal Regulatory limit of 0.064 gr/dscf (corrected to 10% Oxygen) using EPA Method 5.
        ii. Pursuant to 40 CFR 63.865(b)(1), cleanup solvent shall be de-ionized water.
        iii. All runs performed during the source tests shall be referenced in the test report, but only the first three valid runs shall be counted in the run-averaging determination of compliance.
        iv. Permittee shall source test for particulate matter from the Lime Kiln once per calendar year.
        v. Testing is to be done using normal operating conditions, where normal means: pulp production, TCF > 550 ADSTP/day, UBK >600 ADSTP/day and mud flow to precoats > 210 gpm.