---

Attorneys block:

RONALD J. TENPAS
Acting Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

ELLEN MAHAN
Deputy Chief
Environmental Enforcement Section
ANN C. HURLEY, DC Bar No. 375676
Trial Attorney
Environmental Enforcement Section
U.S. Department of Justice
301 Howard Street, Suite 1050
San Francisco, CA 94105
Tel: (415) 744-6480
Fax: (415) 744-6476
E-mail: ann.hurley@usdoj.gov

Attorneys for Plaintiff United States of America

(Additional Attorneys on Next Page)

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, the PEOPLE OF THE STATE OF CALIFORNIA, *ex rel.* CALIFORNIA AIR RESOURCES BOARD, and NORTH COAST UNIFIED AIR QUALITY MANAGEMENT DISTRICT,<br><br>Plaintiffs,<br><br>v.<br><br>EVERGREEN PULP, INC.,<br><br>Defendant. | No. C 07-05067 SBA<br><br>PLAINTIFFS' MEMORANDUM IN SUPPORT OF REQUEST TO ENTER CONSENT DECREE |

*U.S. et al. v. Evergreen Pulp Inc.* No. C 07-05067 SBA — Plaintiffs' Memorandum

EDWIN G. BROWN JR.
Attorney General of the State of California
MARY HACKENBRACHT, Assistant Attorney General
JOHN DAVIDSON, Supervising Attorney General
ANITA E. RUUD, Deputy Attorney General CA Bar No. 072483
Office of the California Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102
Tel: (415) 703-5533
Fax: (415) 703-5480
E-mail: Anita.Ruud@doj.ca.gov

Attorneys for Plaintiff California Air Resources Board


NANCY DIAMOND CA Bar No. 130963
Law Offices of Nancy Diamond
822 G Street, Suite 3
Arcata, CA  95521
Tel: (707) 826-8540
Fax: (707) 826-8541
E-mail: ndiamond@humboldt1.com

Attorney for Plaintiff North Coast Unified Air Quality Management District

1  The United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), the California Air Resources Board ("ARB") and the North Coast Unified Air Quality Management District ("North Coast" or "District") (collectively, the "Plaintiffs") brought an action pursuant to Section 113 of the Clean Air Act (the "CAA"), 42 U.S.C. § 7413, California Health and Safety Code § 42403, and North Coast Unified Air Quality Management District Rule 105 alleging that Defendant Evergreen Pulp, Inc. ("Defendant" or "Evergreen") violated the CAA, California state law and District regulations at its kraft pulp mill in Samoa, Humboldt County, California (the "Facility").

Simultaneously, on October 2, 2007, the Plaintiffs lodged a Consent Decree ("Evergreen Consent Decree", "Consent Decree" or "Decree") with the Court that would require Evergreen to implement certain injunctive relief and pay a civil penalty. Notice of Lodging of the Evergreen Consent Decree was published in the *Federal Register* and the Plaintiffs sought public comment on the proposed settlement. See 72 Fed. Reg. 58125 (Oct. 12, 2007).

During the thirty-day public comment period, the Plaintiffs received two sets of comments. Copies of the comments are attached as Exhibit A. After evaluating the comments as described below, the Plaintiffs have determined that the proposed Evergreen Consent Decree is fair, reasonable, and in the public interest and therefore request the Court to enter the Decree. Pursuant to Paragraph 72 of the proposed Evergreen Consent Decree, Evergreen consented to entry of the Decree without further notice.

## I. BACKGROUND

This case concerns alleged violations of the CAA and state law at a kraft pulp mill owned and operated by Evergreen, and located in Samoa, Humboldt County, California. Specifically, it is alleged that the Facility violated particulate matter ("PM-10") emissions limits applicable to the Facility's smelt dissolving tank ("SDT") and lime kiln. In addition, the Facility is alleged to have violated emissions standards, and monitoring, reporting and recordkeeping ("MRR") requirements imposed by the maximum achievable control technology ("MACT") requirements for Chemical Recovery Combustion Sources at Kraft, Soda, Sulfite, and Stand-Alone

1  Semichemical Pulp Mills at 40 C.F.R. Part 63, Subpart MM, §§ 63.860-868.  There were also

2  alleged violations of Part 4 of Division 26 of the California Health and Safety Code and the

3  Rules and Regulations of the North Coast Unified Air Quality Management District at the lime

4  kiln and the SDT.

5  **II.    THE EVERGREEN CONSENT DECREE**

6         As a part of the settlement of this matter, Evergreen installed an electrostatic precipitator

7  ("ESP") to control air pollutant emissions from the lime kiln, see Para. 16 of Cyntia Steiner's

8  Declaration ("Steiner Declaration"), attached as Exhibit B, and it made modifications to the

9  pollution control device for the SDT.  Steiner Declaration Para. 8.  The Evergreen Consent

10 Decree requires Evergreen to comply with additional injunctive requirements to assure the

11 Facility's compliance with the CAA and state law.  Decree Paras. 10-23.  Significantly, the

12 Evergreen Consent Decree requires Evergreen to comply with emissions limits for PM-10,

13 hazardous air pollutants, and opacity limits that are applicable to the SDT and the lime kiln.

14 Decree Paras. 12 & 17.  The Evergreen Consent Decree also requires Evergreen to comply with

15 MRR requirements, including installation and operation of a continuous opacity monitor system

16 on the lime kiln stack.  Decree Para. 8  In addition, the Evergreen Consent Decree requires

17 Evergreen to pay a civil penalty of $900,000 (divided equally among the three Plaintiffs).

18 Decree Paras. 7-9.

19 **III.    THE COMMENTS AND PLAINTIFFS' RESPONSES**

20        The Plaintiffs received two sets of comments.  The first comment stated that the Facility

21 has polluted the environment for a number of years, the District has not exercised sufficient

22 oversight over the Facility, and questioned whether there were sufficient enforcement tools in the

23 Decree to ensure that Evergreen installs the pollution controls it is required to install under this

24 settlement.  The second comment points out that emissions from the Facility have adversely

25 impacted public health and quality of life in the community surrounding the Facility.

26        The Plaintiffs have responded to the comments through the declaration of Cyntia Steiner,

27 an engineer with EPA, and Richard Martin, Jr., Executive Director, Air Pollution Control

28

1  Officer, with the District.  Ms. Steiner states that the pollution controls installed and/or operated
2  under the proposed Decree properly address the violations of the CAA at the Facility, are
3  ensuring that Evergreen is no longer in violation of the applicable regulatory requirements and
4  are reducing emissions from the Facility.  Mr. Martin reviews the actions that the District has
5  taken to bring the Facility into compliance.

6  **IV.**    **THE EVERGREEN CONSENT DECREE IS IN THE PUBLIC INTEREST**

7  The trial court should enter a consent decree if it is "'reasonable, fair, and consistent with
8  the purposes that [the statute] is intended to serve.'"  <u>United States v. Montrose Chemical Corp.</u>
9  <u>of California</u>, 50 F.3d 741,747 (9th Cir. 1995) (citation omitted).  Because the Evergreen
10 Consent Decree meets this governing standard, the Plaintiffs request the Court to enter the
11 Evergreen  Consent Decree.

12     A.    <u>Standard of Review for Approving a Consent Decree</u>

13 Approval of a proposed consent decree is committed to the informed discretion of the
14 district court.  <u>United States v. State of Oregon</u>, 913 F.2d 576, 580 (9th Cir. 1990); <u>SEC v.</u>
15 <u>Randolph</u>, 736 F.2d 525, 529 (9th Cir. 1984).  The court's discretion should be exercised in
16 favor of the strong policy favoring voluntary settlement of litigation.  <u>Ahern v. Central Pacific</u>
17 <u>Freight Lines</u>, 846 F.2d 47, 48 (9th Cir. 1988).  This policy has "particular force where . . . a
18 government actor committed to the protection of the public interest has pulled the laboring oar in
19 constructing the proposed settlement."  <u>United States v. Cannons Eng'g Corp.</u>, 899 F.2d 79, 84
20 (1st Cir. 1990); <u>see</u> <u>also</u> <u>United States v. SEPTA</u>, 235 F.3d 817, 822 (3d Cir. 2000) (judicial
21 review of a settlement negotiated by the United States should be informed by the deference owed
22 to "EPA's expertise and to the law's policy of encouraging settlement").  Accordingly, the Ninth
23 Circuit has stated that "a district court reviewing a proposed consent decree 'must refrain from
24 second-guessing the Executive Branch.'"  <u>Montrose Chemical Corp.</u>, 50 F.3d at 746; <u>see</u> <u>also</u>
25 <u>United States v. Bechtel Corp.</u>, 648 F.2d 660, 666 (9th Cir. 1981) (the balancing of interests
26 "must be left, in the first instance, to the discretion of the Attorney General").

27 In undertaking its review, a court is not required to make the same in-depth analysis of a
28

1  proposed settlement that it would be required to make in order to enter a judgment on the merits
2  after trial. "The trial court in approving a settlement need not inquire into the precise legal rights
3  of the parties nor reach and resolve the merits of the claims or controversy, but need only
4  determine that the settlement is fair, adequate, reasonable and appropriate under the particular
5  facts and that there has been valid consent by the concerned parties." Citizens for a Better Env't
6  v. Gorsuch, 718 F.2d 1117, 1126 (D.C. Cir. 1983); accord, State of Oregon, 913 F.2d at 582.

7       A court does not have the authority to modify the decree. Instead, it must either accept or
8  reject the decree as submitted. See Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615,
9  630 (9th Cir. 1982). The relevant standard "is not whether the settlement is one which the court
10 itself might have fashioned, or considers as ideal, but whether the proposed decree is fair,
11 reasonable, and faithful to the objectives of the governing statute." Cannons Eng'g Corp., 899
12 F.2d at 84.

13      B.     The Consent Decree is Fair

14      In assessing a proposed settlement, courts consider both procedural and substantive
15 fairness. Cannons Eng'g Corp., 899 F.2d at 86-88. In this case, the parties were represented by
16 independent counsel and negotiated for a substantial period of time before finally reaching a
17 settlement agreement. As the Ninth Circuit concluded in State of Oregon, 913 F.2d at 581, if a
18 settlement is the product of good faith, arm's length negotiations, it is "presumptively valid and
19 the objecting party 'has a heavy burden of demonstrating that the decree is unreasonable.'" The
20 settlement here is also substantively fair because it takes into account the public interest by
21 requiring the installation of control equipment that will limit the emissions of a number of air
22 pollutants. Steiner Declaration Para. 18. In addition, the settlement requires the payment of a
23 penalty that reflects the significance of the violations and that recoups any economic benefit
24 potentially gained by prior non-compliance at the Facility. Steiner Declaration Para. 23.

25      C.     The Consent Decree is Reasonable and Furthers the CAA's Goals

26      In ascertaining whether a settlement is reasonable, a court considers factors such as the
27 nature and extent of the potential hazards, the availability and likelihood of alternatives to the
28

1 settlement, whether the settlement is technically adequate to accomplish the goal of cleaning up
2 the environment, and the extent to which the settlement furthers the statute's goals. United
3 States v. BP Exploration & Oil Co., 167 F. Supp. 2d 1045, 1053 (N.D. Ind. 2001); see also
4 United States v. Seymour Recycling Corp., 554 F. Supp. 1334, 1339 (S.D. Ind. 1982). The
5 underlying purpose of the review is to determine whether the settlement adequately protects the
6 public interest. BP Exploration & Oil Co., 167 F. Supp. 2d. at 1049.

7 As part of the settlement in this case, Evergreen installed pollution control equipment on
8 the lime kiln and the SDT. Steiner Declaration Para. 8 and Para. 16. EPA estimates that this
9 settlement will have resulted in significant reductions of harmful air pollutants from the lime kiln
10 of approximately 240 tons per year. Steiner Declaration Para. 18.

11 If this case had been litigated, the Court would have needed to decide the technically
12 complex issues associated with the installation of pollution control equipment. Assuming that
13 the Court would have granted the Plaintiffs' request for relief, a potential appeal of the Court's
14 ruling would have potentially delayed implementation of the remedy even farther into the future.
15 In assessing this case, the Plaintiffs determined that the value of timely concrete results achieved
16 by the Evergreen Consent Decree clearly outweighed the value of possible future relief to be
17 ordered by this Court after protracted and expensive litigation. Jones v. Nuclear Pharmacy, Inc.,
18 741 F.2d 322, 324 (10th Cir. 1984); United States v. Chevron U.S.A., Inc., 380 F. Supp. 2d
19 1104, 1118 (N.D. Cal. 2005).

20 **V.    PLAINTIFFS' RESPONSE TO COMMENTS ON THE EVERGREEN CONSENT DECREE**
21

22 The public comments which are relevant to the allegations in the Complaint and the
23 Evergreen Consent Decree are summarized below, followed by the Plaintiffs' response to the
24 comments.
25

26 **Commenter 1 (Campbell)**
27
28

Comment 1: One commenter expressed a concern that the Facility has been allowed to operate "all these years spewing out emissions that violated the federal emission standard for hazardous air pollutants."

Response:  The Facility has existed since 1965.  For many years, the Facility was owned and operated by Louisiana Pacific, Inc.  In February 2001, Louisiana Pacific sold the Facility to Samoa Pacific Cellulose, LLC.  Samoa Pacific owned and operated the Facility until August 2003, when ownership of the mill passed to Stockton Pacific Enterprise, LLC.  Stockton Pacific Enterprise owned and operated the Facility until January 2005, when control was assumed by Evergreen Pulp, Inc.  Evergreen is the current owner and operator, and the Defendant in this case.  Steiner Declaration Para. 5.

The Decree primarily addresses alleged violations of Clean Air Act emissions requirements at two of the Facility's emissions units: the SDT and the lime kiln.  In the Complaint, Plaintiffs alleged that the Facility's SDT exceeded a limit on particulate matter ("PM") emissions of .2 pounds of PM per ton of Black Liquor Solids ("lb/ton BLS").  This limit is imposed through 3 separate regulatory programs: the New Source Performance Standards ("NSPS"); the Facility's Title V Operating Permit; and the Maximum Achievable Control Technology ("MACT") requirements.  Steiner Declaration Para. 6.  The time period of the alleged violations is from January 2005 (when the Defendant assumed ownership of the Facility) until September 15, 2005. Steiner Declaration Para. 7.  In early September 2005, the Defendant installed and commenced operation of a "spray curtain" to improve the performance of the equipment used to reduce PM emissions from the SDT.  Steiner Declaration Para. 8.  Defendant conducted a source test on September 15, 2005, that demonstrated that the Facility was achieving compliance with the .2 lb/ton BLS limit.  Steiner Declaration Para. 9.  Except for a short period of time between November 21, 2005 and December 7, 2005, when the Facility experienced minor non-compliance likely associated with the updating of monitoring equipment, source testing at the Facility has indicated compliance with SDT PM limits.  Steiner Declaration Para.

11.

In the Complaint, the Plaintiffs also alleged that the Facility's lime kiln exceeded limits on PM emissions. One limit is imposed by the Facility's Title V Operating Permit, which restricts PM emissions to .2 grains per standard cubic foot or 1 pound per ton of production. Steiner Declaration Para. 12. A source test conducted in March 2005 indicated that the Facility was in compliance with this limit. Steiner Declaration Para. 13. The Facility conducted another test in August 2005, which indicated the Facility was not in compliance with this limit. Steiner Declaration Para. 13. Therefore, the Plaintiffs alleged violations of this limit from August 2005. Steiner Declaration Para. 13.

The lime kiln is also subject to a limit imposed by the federal MACT program, which restricts emissions of harmful air pollutants to .064 grains per dry standard cubic foot ("dscf"). Steiner Declaration Para. 14. The MACT program became effective in March 2004, at which time the Facility was under a different ownership. Steiner Declaration Para. 5. In the Complaint, the Plaintiffs alleged that the Defendant violated this limit from the date the Defendant began pulp production in March 2005. As stated above with respect to the Facility's non-compliance with the PM limit in the Facility's Title V permit, the Plaintiffs believe the Defendant's installation and operation of an ESP has brought the Defendant into compliance with the MACT emission standard. Steiner Declaration Para. 17.

Comment 2: The commenter expressed concern about the level of oversight of the Facility by the North Coast Unified Air Quality Management District.

Response: The District has been actively involved in oversight of the Facility as identified below. This oversight is continuous for this Facility and includes many different forms of compliance determinations. See Para. 6 of Richard Martin Jr.'s Declaration ("Martin Declaration"), attached as Exhibit C. District-issued permits require the Facility to monitor and/or test emissions from its different emissions producing units with regular frequency (for

1  some equipment, continuous monitoring is required; for other equipment, quarterly reporting
2  and/or annual testing is required).  The District actively reviews these monitoring reports and
3  will initiate enforcement as appropriate.  Additionally, because the Evergreen pulp mill is a Title
4  V source, the District conducts full compliance evaluations during regular inspections of the
5  Facility at least annually.   Martin Declaration Para. 5.

6  Enforcement activity by the District, initiated in April 2005, resulted in the District
7  Hearing Board issuing an order to Evergreen to install a spray curtain on the SDT to control
8  excess PM emissions.  Martin Declaration Para. 8.  In November 2005, the District Hearing
9  Board issued an order to Evergreen requiring it to prepare and submit CAM (Compliance
10 Assurance Monitoring) Plans for the lime kiln and SDT.  Martin Declaration, Para. 9.  In January
11 2006, the District Hearing Board issued an Abatement Order requiring Evergreen to install an
12 ESP on the lime kiln.  Martin Declaration, Para. 10.  This Abatement Order also required the
13 immediate installation of an interim control measure on the lime kiln, a quench system, to reduce
14 excess PM emissions.  Id.  Continued operation of the spray curtain pretreatment system for the
15 SDT and of the interim quench system and ESP installation/operation requirements are all
16 components of injunctive relief in the Decree.

17 The proposed Decree would settle 11 Notices of Noncompliance issued by the District to
18 Evergreen for violations of local, state and federal air quality rules and regulations.  Martin
19 Declaration Para. 11.  Most of these violations concern PM emissions from the SDT and lime
20 kiln discovered during regular compliance testing.  Id.  Equipment maintenance violations were
21 discovered during inspections.  Martin Declaration Para. 12.  Excess opacity violations were
22 discovered through review of Continuous Emissions Monitoring (CEM) data.  Martin
23 Declaration, Para. 13.  Finally, nuisance-type violations, generally excess odor, were discovered
24 by District follow-up investigations of public complaints.  Martin Declaration Para. 14.
25

26 Comment 3: The commenter asked whether there can be any certainty that the Defendant "will
27 install all of the equipment required to guarantee that the hazardous air pollutants will no longer
28

be coming out of their smoke stacks" and whether Defendant will continue to just pay fines rather than install "the expensive equipment that is required to stop the toxic emissions."

Response: EPA estimates that Defendant has already spent approximately $4 million on control equipment to comply with applicable emission standards. Steiner Declaration Para. 22. In September 2005, Defendant addressed non-compliance related to excess emissions at the SDT by installing a spray curtain pretreatment system for the existing controls, which returned the SDT to compliance with applicable emissions standards. Steiner Declaration Paras. 8 - 11. In April 2007, Defendant addressed non-compliance related to excess emissions at the lime kiln by installing an ESP on the lime kiln emission stack. Steiner Declaration Para. 16. The Plaintiffs will continue to oversee Defendant's compliance with emissions standards by reviewing Defendant's monitoring and operational records. Moreover, the Consent Decree contains stipulated penalties for violations of the Decree, Decree Paras. 29-32, and the obligations the Decree imposes upon Evergreen are enforceable through the Court should there be questions about whether Evergreen had done all that it is required to do under the Decree.

It should be noted that the Evergreen Consent Decree does not require Defendant to "stop toxic emissions." Plaintiffs estimate, however, that implementation of the Decree through the operation of the spray curtain and ESP will reduce the Facility's emissions of harmful air pollutants by approximately 340 tons per year. Steiner Declaration Paras. 10 & 18. Based on source test information, EPA estimates that there has been a reduction of approximately 98% in the emission of harmful air pollutants from the lime kiln compared to the lime kiln's emissions before installation of the ESP. Steiner Declaration Para. 18. There is no statutory, regulatory, or evidentiary basis to require the Defendant to cease all emissions of hazardous air pollutants.

**Commenter 2 ("Halonet")**

Comment 1: The commenter expresses concern that the air emissions from the Facility are

1 affecting the quality of life of the people living in Eureka.

2

3 Response: Pulp mills such as the Facility characteristically use chemical processes to turn wood
4 chips and sawdust into wood pulp. Martin Declaration Para. 7. These processes result in the
5 emission of sulfurous odors known as total reduced sulfur, or TRS, compounds, which are
6 controlled and regulated through permit conditions. Id. However, the release of TRS can create
7 an annoyance or nuisance to members of the public. Id. These odors are likely at the basis of
8 the commenter's concern. Part of the penalty required by this consent decree relates to
9 Defendant's violation of state nuisance requirements. Martin Declaration Para. 11. District staff
10 will continue in the future to investigate public complaints as they come in and take enforcement
11 action as appropriate. Martin Declaration Para. 7. In addition, in early September 2005,
12 Evergreen installed and commenced operation of a spray curtain before the wet scrubber to
13 reduce SDT PM emissions. Steiner Declaration, Para. 8. EPA believes that, if properly
14 maintained and operated, the spray curtain may help reduce TRS emissions. Id.

15

16 Comment 2: The commenter expresses concern that the air emissions from the Facility are
17 affecting the health of the people living in Eureka.

18

19 Response: This Decree requires Defendant to install, operate and maintain equipment to reduce
20 emissions of particulate matter and hazardous air pollutants. The Plaintiffs anticipate that the
21 equipment required by this consent decree will reduce Defendant's emissions of harmful air
22 pollutants by 340 tons per year. Steiner Declaration Paras. 10 & 18.

23

24 Comment 3: The commenter stated that the fines in this settlement are insufficient; that the
25 penalty should be $100 million a day for every day the Facility is out of compliance; and that the
26 Facility "needs to be closed finally and permanently and then torn down.

27

28

Response: Under the terms of the Evergreen Consent Decree, Evergreen agrees to pay a civil penalty of $900,000. This settlement amount is consistent with EPA's Clean Air Act Stationary Source Civil Penalty Policy, dated October 25, 1991. Steiner Declaration Para. 23. In addition, the Decree specifies that Evergreen must pay the civil penalty in equal shares to the three governmental entities that actively pursued the alleged violations in this case. The penalty-sharing aspect of the case is consistent with EPA guidance entitled, "Joint Collection of Penalties with State and Local Governments and Federally Recognized Indian Tribes," dated March 11, 2005, signed by Thomas V. Skinner, Acting Administrator ("Joint Collection of Penalties Memo"). Steiner Declaration Para. 24. There is no statutory, regulatory, or evidentiary basis to require the Defendant to cease operation of the Facility. The Consent Decree properly carries out the mandate of the CAA by requiring pollution controls that will bring Evergreen into compliance with the existing regulatory requirements.

## VI.    CONCLUSION

The Evergreen Consent Decree, and the remedy it requires, is fair, reasonable and in the public interest. Moreover, as demonstrated by Plaintiffs' response to the public comments, none of the comments provides any basis for rejecting the Evergreen Consent Decree. The Plaintiffs therefore request the Court to enter the Evergreen Consent Decree.

Respectfully submitted,

For the United States of America:


  /s/ Ann C. Hurley
ANN C. HURLEY
Trial Attorney
Environmental Enforcement Section
United States Department of Justice

OF COUNSEL:

Kara Christenson
Senior Counsel
U.S. Environmental Protection Agency, Region 9
75 Hawthorne Street
San Francisco, CA 94105

1
2                                                             For Plaintiff California Air Resources Board
3
4
5                                                                   /s/ Anita E. Ruud
                                                              ANITA E. RUUD
                                                              Deputy Attorney General
6                                                             California Office of the Attorney General
7
                                                              For Plaintiff North Coast Unified Air Quality
8                                                             Management District
9
10                                                                  /s/   Nancy Diamond
                                                              NANCY DIAMOND
11                                                            Law Offices of Nancy Diamond
12
13        Attestation Regarding Signature: This document is being filed electronically under my
14   User ID and Password.  Pursuant to General Order 45, Section X.B, I hereby attest that
15   concurrence in this filing of this document has been obtained from each of the other signatories
16   to this document.
17
18                                                              /s/ Ann C. Hurley
                                                              Ann C. Hurley
19
20
21
22
23
24
25
26
27
28

*U.S. et al. v. Evergreen Pulp Inc.* No. C 07-05067 SBA        -12-                      Plaintiffs' Memorandum