EXHIBIT A

**From:** mikeca25@suddenlink.net
**Sent:** Friday, November 02, 2007 1:18 AM
**To:** ENRD, PUBCOMMENT-EES (ENRD)
**Subject:** United States et al. vs. Evergreen Pulp, Inc. D. J. Ref. 90-5-2-17-08786
Attention: Assistant Attorney General, Environment and Natural Resources Division
United States et al. vs. Evergreen Pulp, Inc. D. J. Ref. 90-5-2-17-08786

When Evergreen Pulp Mill, Inc. started its operation, we the people that have to breathe the hazardous air pollutants that they have been emitting through their operations were guaranteed by the mill that everything was safe and pollutant free. We were told that they had installed the latest type of equipment that would ensure that very little harmful emissions would get into the air so that the people of Eureka, California wouldn't be breathing anything that could be damaging to their health. These emissions are particularly harmful to people with lung diseases. I don't live in Eureka but I work eight hours a day directly in the path of the Evergreen Pulp Mill's emissions. I am livid that this mill has been allowed to operate all of these years spewing out emissions that violated the federal emission standard for hazardous air pollutants "by approximately 230 percent, and they also were to violate monitoring, reporting and record-keeping requirements." Who is the agency that is supposed to be watching this mill and its operations? Is it the the North Coast Air Quality Management District? If so they just received $300,000 in penalties payments from Evergreen Pulp Mill for not doing their job. The United States and the California Air Resources Board each got $300,000 in penalty payments to them paid by the pulp mill. The people that have been breathing this toxic air get absolutely nothing but the strong possibility of developing Bronchitis and Emphysema and maybe even cancer. How do I know that the Evergreen Pulp Mill will install all of the equipment required to guarantee that the hazardous air pollutants will no longer be coming out of their smoke stacks? Wouldn't it be easier for them to continue to just pay the fines than to install the expensive equipment that is required to stop the toxic emissions? Also who is guarding the hen house? I don't know that I can count on the North Coast Air Quality Management District because where were they all of these years when Evergreen was supposed to be environmentally safe?

Carolyn Campbell
1988 Blair Ln.
Fortuna, Ca. 95540

```
                    Evergreen Pulp Inc  No  C 07-05067 SBA_10-24-07.txt
From: halonet@suddenlink.net
Sent: Tuesday, October 23, 2007 8:50 PM
To: ENRD, PUBCOMMENT-EES (ENRD)
Subject: Public Comment on Consent Decree US et al v. Evergreen Pulp,
Inc. No. C 07-05067 SBA
```

It's a beautiful day on the North Coast except that it is marred by the toxic waste clouds emanating from the Evergreen Pulp Mill. When I bought my house in Eureka in 2005 the mill had been shut down. It was not disclosed on any realty documents as an environmental concern or threat. But, as a property owner I was not consulted or notified when it came time for them to go back in business. There was no public input or council hearings that I'm aware of. But, now I'm in a position of having to disclose to any buyer that my home sits in the shadow of this sinister and nasty neighbor.

I keep my windows shut because the stench overwhelms my cooking. I am a gourmet cook and you have taken this joy out of my life. I cannot no longer enjoy dinner or a glass of wine. All you can smell is some acrid concoction of sulfur, methane or other chemicals coming from the Pulp Mill. The smell has managed to get into my sheetrock and is permanently in my home.

If I had known that would be my future, I wouldn't have bought the almost $500,000 home near the golf course in Eureka. I don't entertain friends because they don't want to come to my smelly house and "enjoy" an evening. I didn't know this until someone finally admitted it.

So while Evergreen is making profit they are doing it at the expense of families and lifestyle and people's health. I have asthma. When my lungs give out is Evergreen going to pay for a new replacement set? And where are they going to find one. I have B negative blood and only 2% of the world's population has that blood type, never mind tissue compatibility.

What about all the lungs of all of the 30,000 people living in Eureka? The hearts and lungs of babies? The hearts and lungs of senior citizens who retired here in the last real estate boom thinking it was a pristine environment where they could breathe easily.

The rude awakening is when they started up the beast AGAIN. We thought it was dead but like a bad science fiction movie it came back to life like Frankenstein.

There is no amount of money in the world which could justify the sacrifice of flesh for the benefit of China. Why are we the sacrifice? The fines are not enough. Maybe a $100 million a day would be more like for every day they are out of compliance, but the mill needs to be closed finally and permanently and then torn down.

If indeed they are honorable and good neighbors, then they can offer fair market price to those homeowners who have been stuck with the property that they have devalued by their business practices. Evergreen should take a full page ad in the Times-Standard and Eureka Reporter making this offer. It's the right thing to do.

EXHIBIT B

RONALD J. TENPAS
Acting Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

ELLEN MAHAN
Deputy Chief
Environmental Enforcement Section
ANN C. HURLEY, DC Bar No. 375676
Trial Attorney
Environmental Enforcement Section
U.S. Department of Justice
301 Howard Street, Suite 1050
San Francisco, CA 94105
Tel: (415) 744-6480
Fax: (415) 744-6476
E-mail: ann.hurley@usdoj.gov

Attorneys for Plaintiff United States of America

(Additional Attorneys on Next Page)

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA, the
PEOPLE OF THE STATE OF
CALIFORNIA, *ex rel.* CALIFORNIA
AIR RESOURCES BOARD, and
NORTH COAST UNIFIED AIR QUALITY
MANAGEMENT DISTRICT,

    Plaintiffs,

v.

EVERGREEN PULP, INC.,

    Defendant.

No. C 07-05067 SBA

DECLARATION OF CYNTIA STEINER IN SUPPORT OF UNOPPOSED REQUEST TO ENTER CONSENT DECREE

1

1  EDWIN G. BROWN JR.
   Attorney General of the State of California
2  MARY HACKENBRACHT, Assistant Attorney General
   JOHN DAVIDSON, Supervising Attorney General
3  ANITA E. RUUD, Deputy Attorney General CA Bar No. 072483
   Office of the California Attorney General
4  455 Golden Gate Avenue, Suite 11000
   San Francisco, CA 94102
5  Tel: (415) 703-5533
   Fax: (415) 703-5480
6  E-mail: Anita.Ruud@doj.ca.gov

7  Attorneys for Plaintiff California Air Resources Board


8  NANCY DIAMOND CA Bar No. 130963
   Law Offices of Nancy Diamond
9  822 G Street, Suite 3
   Arcata, CA 95521
10 Tel: (707) 826-8540
   Fax: (707) 826-8541
11 E-mail: ndiamond@humboldt1.com

12 Attorney for Plaintiff North Coast Unified Air Quality Management District

13                    DECLARATION OF CYNTIA STEINER

14  I, Cyntia Steiner, declare the following:

15
16  1.   I am an Environmental Engineer employed by the U.S. Environmental Protection Agency,

17       Region IX ("Region IX"), in San Francisco, California. I obtained a master of science

18       degree in chemical engineering from the University of California, Los Angeles, in 1992

19       and a bachelor of science degree in chemical engineering from University of California,

20       San Diego in 1986. Since 1997, I have been employed at EPA Region IX as an

21
22       Environmental Engineer in the Air Division. In this capacity, I develop enforcement

23       cases against regulated entities subject to the requirements of the Clean Air Act.

24  2.   I submit this Declaration in support of the United States' Motion to Enter Consent

25       Decree. I have personal knowledge of the matters set forth herein, except for those items

26       stated to be based upon information and belief. For those items based upon information
27
28                                              2

and belief, I have relied upon information reasonably relied on by professionals in my field to inform our professional judgment and opinion, and as to those matters I am informed and believe them to be true as expressly stated herein, and if called to testify I could and would competently testify thereto.

3. Since approximately May 2005, I have been assigned to the matter now known as United States v. Evergreen Pulp, Inc., Civil Action No. C07-05067 SBA. This case concerns violations of the Clean Air Act at a kraft pulp mill owned and operated by Evergreen Pulp, Inc. (the "Facility"). The mill is located in Samoa (Humboldt County), California.

4. Since July 2005, EPA has worked closely with enforcement staff from the North Coast Air Quality Management District ("District") and the California Air Resources Board ("CARB") in investigating, negotiating, and resolving emissions and monitoring violations at two of the Facility's emissions units: the smelt dissolving tank ("SDT") and the lime kiln.

## Background and Operational History

5. During my investigation of the Evergreen Pulp mill compliance issues together with other EPA staff, the District and the CARB, I discovered the following information. For many years following the Facility's construction in 1965, it was owned and operated by Louisiana Pacific, Inc. In February 2001, Louisiana Pacific sold the Facility to Samoa Pacific Cellulose, LLC. Samoa Pacific owned and operated the Facility until August 2003, when ownership of the mill passed to Stockton Pacific Enterprise, LLC. Stockton Pacific Enterprise owned and operated the Facility until January 2005, when control was

assumed by Evergreen Pulp, Inc. Evegreen Pulp is the current owner and operator. Evergreen Pulp commenced pulp production in March 2005.

### SDT Violations

6. I also determined that the Facility's SDT exceeded a limit on particulate matter ("PM") emissions of 0.2 pounds of PM per ton of Black Liquor Solids ("lb/ton BLS"). This limit is imposed through three separate regulatory programs: the federal New Source Performance Standard requirements at 40 C.F.R. Part 60, Subpart BB, §§60.280-285 ("NSPS"); the Facility's Title V Operating Permit (#NCU 037-12, issued August 31, 2001); and the federal Maximum Achievable Control Technology ("MACT") requirements for Chemical Recovery Combustion Sources at Kraft, Soda, Sulfite, and Stand-Alone Semichemical Pulp Mills at 40 C.F.R. Part 63, Subpart MM, §§63.860-868 ("Kraft pulp mill MACT"), which became effective in March 2004.

7. Based on source test information that I reviewed, I determined that the Defendant had been in violation of the SDT particulate emission limit from approximately January 2005 through September 15, 2005.

8. I am informed and believe and on that basis assert that in early September 2005, Evergreen Pulp installed and commenced operation of a "spray curtain" before the wet scrubber to reduce SDT PM emissions. If properly maintained and operated, the spray curtain may help reduce TRS emissions.

9. I am informed and believe and on that basis assert that on September 15, 2005, a source test conducted at the Facility demonstrated that the SDT was achieving compliance with the 0.2 lb/ton BLS limit when the wet scrubber and "spray curtain" are operated properly.

4

10. Based on my review of source test information, I estimate that the Facility has reduced emissions of harmful air pollutants from the SDT by as much as 100 tons per year. This quantity represents a reduction of approximately 77% compared to the SDT's emissions before installation of the "spray curtain."

11. I am informed and believe that except for a short period of time between November 21, 2005 and December 7, 2005, when the Facility experienced minor non-compliance likely associated with the updating of monitoring equipment, source testing at the Facility has indicated that the SDT can operate a well below the PM limit of 0.2 lb/ton BLS. When both the wet scrubber and spray curtain are operated properly.

### Lime Kiln Violations

12. My investigation also led me to determine that the Facility's lime kiln violated emissions limits for PM imposed by its Title V Operating Permit, which restricts PM emissions to 0.2 grains per standard cubic foot (at 10 percent oxygen) or 1 pound per ton of kraft pulp production.

13. I am informed and believe that a source test conducted at the Facility in March 2005 indicated that the Facility was in compliance with these limits; another test conducted in August 2005 indicated that the Facility was not in compliance with these limits. EPA therefore determined that the Facility was in violation of the limits from August 2005.

14. My investigation also led me to determine that the lime kiln is subject to the Kraft pulp mill MACT, which restricts the kiln's emissions of harmful air pollutants to 0.064 grains per dry standard cubic foot.

15. Based on source test information that I reviewed, I determined that the Facility had been violating this standard at least since March 2005, when the Defendant began pulp production.

16. I am informed and believe and on that basis assert that in April 2007, Evergreen Pulp completed installation and commenced operation of an electrostatic precipitator ("ESP") to reduce emissions from the lime kiln.

17. Based on my review of source tests conducted at the Facility on September 9, 2007, I have determined that when the lime kiln emissions are controlled by the ESP, the lime kiln can operate well below its emission limits.

18. Based on my review of source test information, I estimate that the Facility has reduced emissions of harmful air pollutants from the lime kiln by as much as 240 tons per year. This quantity represents a reduction of approximately 98% compared to the kiln's emissions before installation of the ESP.

<u>Monitoring, Reporting, and Recordkeeping Violations</u>

19. My investigation also led to the determination that the Facility was in violation of monitoring, reporting and recordkeeping ("MRR") requirements imposed by the Kraft pulp mill MACT.

20. The Kraft pulp mill MACT requires the installation and operation of a continuous opacity monitoring system ("COMS") on the lime kiln emissions stack.

21. I am informed and believe that Evergreen completed installation of the lime kiln COMS in April 2007, and certified the proper operation of the COMS in July 2007.

## Costs Associated with Compliance and Civil Penalties

22. Based on my experience and expertise, Evergreen's estimate that it has expended approximately $4 million to comply with applicable emission standards is reasonable.

23. Under the terms of the attached Decree, Evergreen agrees to pay a civil penalty of $900,000. This amount reflects the significance of the violations and recoups any economic benefit potentially gained by prior non-compliance at the Facility, and is consistent with EPA's Clean Air Act Stationary Source Civil Penalty Policy, dated October 25, 1991.

24. In addition, the Decree specifies that Evergreen must pay the civil penalty in equal shares to the three governmental entities that actively pursued the violations in this case. The penalty-sharing aspect of the case is consistent with EPA guidance entitled, "Joint Collection of Penalties with State and Local Governments and Federally Recognized Indian Tribes," dated March 11, 2005, signed by Thomas V. Skinner, Acting Administrator ("Joint Collection of Penalties Memo"). According to the memorandum, "EPA generally encourages state, local and tribal participation in federal environmental enforcement actions."

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge. Executed this __13th__ day of __December__ 2007 at Pinole, California.

_____
Cyntia Steiner

7

EXHIBIT C

RONALD J. TENPAS
Acting Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

ELLEN MAHAN
Deputy Chief
Environmental Enforcement Section
ANN C. HURLEY, DC Bar No. 375676
Trial Attorney
Environmental Enforcement Section
U.S. Department of Justice
301 Howard Street, Suite 1050
San Francisco, CA 94105
Tel: (415) 744-6480
Fax: (415) 744-6476
E-mail: ann.hurley@usdoj.gov

Attorneys for Plaintiff United States of America

(Additional Attorneys on Next Page)

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, the PEOPLE OF THE STATE OF CALIFORNIA, *ex rel.* CALIFORNIA AIR RESOURCES BOARD, and NORTH COAST UNIFIED AIR QUALITY MANAGEMENT DISTRICT,<br><br>Plaintiffs,<br><br>vs.<br><br>EVERGREEN PULP, INC.,<br><br>Defendant | No. C07-05067 SBA<br><br>DECLARATION OF RICHARD L. MARTIN, JR., AIR POLLUTION CONTROL OFFICER, IN SUPPORT OF UNOPPOSED REQUEST TO ENTER CONSENT DECREE |

U.S. et al. v. Evergreen Pulp Inc. No. C 07-05067 SBA                              Plaintiffs' Memorandum

EDWIN G. BROWN JR.
Attorney General of the State of California
MARY HACKENBRACHT, Assistant Attorney General
JOHN DAVIDSON, Supervising Attorney General
ANITA E. RUUD, Deputy Attorney General CA Bar No. 072483
Office of the California Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102
Tel: (415) 703-5533
Fax: (415) 703-5480
E-mail: Anita.Ruud@doj.ca.gov

Attorneys for Plaintiff California Air Resources Board


NANCY DIAMOND CA Bar No. 130963
Law Offices of Nancy Diamond
822 G Street, Suite 3
Arcata, CA 95521
Tel: (707) 826-8540
Fax: (707) 826-8541
E-mail: ndiamond@humboldt1.com

Attorney for Plaintiff North Coast Unified Air Quality Management District

I, RICHARD L. MARTIN, JR. declare as follows:

1. I am the Executive Director, Air Pollution Control Officer ("APCO") for the North Coast Unified Air Quality Management District ("District") and have been so employed since September 29, 2006.

2. I have personal knowledge of the matters set forth herein, except for those items stated to be based on information and belief. For those items based on information and belief, I have relied upon information reasonably relied upon by professionals in my field to inform our professional judgment and opinion, and as to those matters I am informed and believe them to be true as expressly stated herein, and if called to testify I could and would competently testify thereto.

3. I submit this Declaration in support of Plaintiff's Request to Enter Consent Decree.

4. The APCO is responsible for permitting air emissions from all Title V sources in its district, in accordance with federal and California laws and for enforcing alleged permit violations and violations alleged of applicable rules and regulations adopted to achieve and maintain ambient air quality standards.

5. The District has issued permit number NCU 037-12, a Permit to Operate, for five specified permit unit emission sources at the Facility currently owned by Evergreen Pulp, Inc., pursuant to Title V of the Federal Clean Air Act and the District's Rules and Regulations ("Title V Permit"). All Title V permit sources including the Evergreen Pulp Mill receive full compliance evaluations during regular inspections of the Facility at least annually.

6. The specified Title V Permit unit emissions are: a recovery boiler, lime kiln, smelt dissolver, non-condensable gas system, and HVLC other sources. For each of these units, the Title V Permit requires a specific monitoring and reporting schedule. As a consequence, the District receives regular reports setting forth emissions from the various control units at the

Facility, which District staff review as a routine part of their duties. Data indicating non-compliance will initiate District enforcement as appropriate.

7. In addition to receiving regular monitoring reports from a source, the District may also receive public complaints. The chemical processes used to convert wood chips and sawdust into wood pulp generate odorous compounds (some are called Total Reduced Sulfur, or TRS) as a byproduct, which are controlled and regulated through permit conditions. However, the occasional release of these odors can create an annoyance or nuisance to members of the public. District staff will investigate public complaints as they come in and take enforcement action as appropriate.

8. I have reviewed the District's compliance and enforcement files for Evergreen Pulp, Inc., and on that basis am informed and belief that on June 25, 2005, as the result of an APCO initiated enforcement, the District Hearing Board issued an Order for Interim Variance # 2005-03, which granted Evergreen Pulp, Inc. an interim variance from particulate matter emissions limits from the smelt dissolver, on the condition that Evergreen Pulp, Inc. install a "spray curtain" to bring the smelt dissolving tank ("SDT") into compliance.

9. I am further informed and believe that on November 3, 2005 the District Hearing Board issued an Order for Interim Variance # 10-05-05-1, which granted Evergreen Pulp, Inc. an interim variance from lime kiln particulate matter limits, subject to the condition that Evergreen prepare and submit Compliance Assurance Monitoring ("CAM") plans for the installation or adoption of devices, procedures or practices to enable the District field staff to determine, on a real time basis, the performance of lime kiln and smelt dissolver tank emissions control equipment by reference to appropriate operating parameters. In addition, this Variance Order required a timeline for the design and installation of appropriate control technology that would bring the lime kiln into regular, ongoing compliance with particulate matter limitations. Finally, this Variance Order required Evergreen Pulp, Inc. to develop and submit a plan to mitigate lime

kiln particulate matter emissions on an interim basis, before the permanent control could be installed and become operational.

10. I am further informed and believe that on January 20, 2006, the District Hearing Board issued an Order for Stipulated Abatement requiring Evergreen Pulp, Inc. to install an electrostatic precipitator ("ESP") on the lime kiln, and in the interim, to mitigate excess particulate matter emissions by the installation and operation of additional control technology referenced to as a "quench system."

11. I am further informed and believe that the District served Evergreen Pulp, Inc. with 11 different Notices of Non-Compliance ("NONs), resulting from the District's investigation of the Facility operation that would be settled in the Consent Decree, including the payment by Evergreen of civil penalties. Several of these NONs allege particulate matter exceedances from the lime kiln and smelt dissolver. These violations were discovered by District staff when reviewing compliance testing reports.

12. Other NONs issued by the District to Evergreen Pulp, Inc. allege violations of equipment operation. These violations were discovered by District staff during plant inspections.

13. Other NONs issued by the District to Evergreen Pulp, Inc. allege exceedances of opacity, which were discovered by the District upon reviewing monitoring data supplied by Evergreen Pulp, Inc.

14. Finally, several of the NONs issued by the District to Evergreen Pulp, Inc. allege the creation of a nuisance as a result from excess odors. These NONs were initated after investigating public complaints made to the District offices.

///

///

///

1  I declare under penalty of perjury that the foregoing is true and correct. Executed this
2  6th day of December 2007 at Eureka, California.

*[signature]*

RICHARD L. MARTIN, JR.
Air Pollution Control Officer
North Coast Unified Air Quality
Management District